# SUPREME COURT OF MISSOURI
# en banc


| | |
|---|---|
| MARY ELLISON, ARTHUR FRY, DAVID FRY, and SUSAN SLEEPER, <br>     Appellants/Cross-Respondents, | ) ) ) ) |
| vs. | )    No. SC93760 |
| J.D. FRY, DECEASED, BY LINDA FRY, TRUSTEE OF THE JOHN DELBERT FRY REVOCABLE INTERVIVOS TRUST, et al., <br>     Respondents/Cross-Appellants. | ) ) ) ) ) ) |

**Appeal from the Circuit Court of Camden County**
**Honorable Ralph Jaynes, Judge**

*Opinion issued August 19, 2014*

In a family dispute over the inheritance of money and property, Plaintiffs Mary Ellison, Susan Sleeper, and David and Arthur Fry appeal the trial court's dismissal of all of Arthur's claims and some of David, Susan, and Mary's claims.[1]  Defendants cross-appeal the court's refusal to dismiss all of the remaining claims.  As a result of the dismissals, the trial court submitted only six of the ten claims Plaintiffs initially brought. The primary defendant, J.D. Fry, died after suit was filed but before trial. The trial court substituted J.D.'s wife, Linda Fry, in her capacity as trustee of J.D.'s trust.  The jury returned verdicts against Linda Fry, as substitute for J.D., and in favor of Mary, David and Susan on three of their claims that J.D. committed frauds and other wrongs beginning

---

[1] For the sake of brevity and clarity, the parties are referred to by their given names.  No disrespect is intended.

in 1990 that resulted in J.D.'s pecuniary gain. The trial court overruled Defendants' motion for judgment notwithstanding the verdict.

This Court reverses the trial court's judgment on the jury verdicts in favor of David, Susan and Mary. The statute of limitations for fraud claims, section 516.120(5),[2] gives a person up to 10 years to discover the fraud and requires, without exception, that all such claims be brought within five years of discovery so that no claim of fraud may be brought more than 15 years after the fraud occurred, even if the fraud is concealed for a longer period. Because Susan and David's claims were brought more than 15 years after the fraud allegedly occurred in 1990, their claims are time-barred by section 516.120(5). Mary's claims likewise are barred. Sections 537.010 and 537.021.1(2) require substitution of J.D.'s personal representative. Linda was not J.D.'s personal representative – indeed, Plaintiffs failed even to open an estate – and, therefore, it was improper to substitute Linda upon J.D.'s death.

The trial court properly dismissed Plaintiffs' other claims before trial for the reasons noted below, and the judgment of the trial court with respect to these claims is affirmed. The judgment on the jury verdicts for Plaintiffs is reversed, and the case is remanded for entry of judgment for Defendants on those claims.

I.      *FACTUAL BACKGROUND*

In 1981, Vincil and Willa Fry executed a joint will that distributed their assets among their children, Mary Ellison, Arthur Fry, and J.D. Fry, and two grandchildren, David Fry and Susan Sleeper. The will devised a 40-acre tract of land and cash to Mary,

a 160-acre homestead to J.D., and a 200-acre tract of land to David and Susan, subject to a life estate in their father Arthur.

In 1990, when he was 82 years old, Vincil caused a car crash that injured the occupants of another car. Although Vincil and Willa were fully insured, they worried that Vincil's liability would cost them their farm. J.D. took them to his attorney, and in June 1990 they executed new wills, settled a trust to benefit Arthur, Susan, and David, and deeded the 200-acre farm to J.D. and the 160-acre homestead to J.D.'s son Delbert, reserving life estates for themselves in both properties. Vincil and Willa also conveyed the 40-acre tract to Mary subject to life estates in themselves. In their 1990 wills, Vincil and Willa devised all of their property to the surviving spouse or, if the other spouse was deceased, to their three children. J.D. subsequently conveyed the 200-acre tract to himself and his wife, Linda, and they later conveyed the land into the J.D. Fry Revocable Inter Vivos Trust. In 1998, Vincil granted J.D. his durable power of attorney. Vincil died in 2000, and Willa died in 2005. After Willa's death, her monies were distributed among the children without a probate estate being opened because, the children later said, they did not believe there was enough property to make it worthwhile to open an estate.

Three years later, in April 2008, Mary sued to set aside the 1990 deeds to J.D. and Delbert and brought claims against J.D. for breach of fiduciary duty, fraud, conversion, and unjust enrichment. Though the 1990 deeds transferring property to J.D. were recorded and reported in the newspaper, Mary alleged that she and Arthur did not know that J.D. gave no consideration for the deeds until December 2006 because J.D.

---

[2] All statutory references are to RSMo 2000 unless otherwise noted.

fraudulently concealed this information. Nor was she aware of their 1990 wills, which replaced the also unknown 1981 will that had divided Willa and Vincil's property evenly among the children. Mary also alleged that J.D. had used the power of attorney he obtained in 1998 to purchase multiple certificates of deposit (CDs) in his own name with Vincil and Willa's funds and to cash other CDs owned by Willa and Vincil that had listed Mary and Arthur as payable-on-death beneficiaries. She further alleged that J.D. exercised undue influence over his parents to obtain the 1990 deeds, change their wills, and obtain powers of attorney, and that he acted fraudulently and unjustly enriched himself. Arthur did not join Mary's suit and instead entered into a settlement agreement with J.D. under which he fully released any and all potential claims in exchange for $100. J.D. vehemently denied all of the allegations.

In December 2008, just a few months after the suit was filed, J.D. died. Mary filed suggestions of death on December 15, 2008. Rule 52.13 requires that a new party be substituted in the manner permitted by the probate statutes within 90 days after a suggestion of death is filed or the case will be dismissed without prejudice. Sections 537.010 and 537.021.1(2) together provide that a property claim against a defendant may continue after the defendant's death by substituting the appointed personal representative of the deceased defendant's estate. Neither Arthur, Mary, nor any person legally entitled to do so opened an estate for J.D. or sought appointment of a personal representative. Mary instead moved the trial court to substitute J.D.'s daughter as a defendant in J.D.'s place. Defendants objected that only a personal representative could be appointed. The trial court *sua sponte* substituted J.D.'s widow, Linda, in her capacity as trustee of J.D.'s

4

trust, as defendant.

Plaintiffs subsequently subpoenaed Arthur's testimony and, in 2011, Arthur and his children David Fry and Susan Sleeper joined the suit. Plaintiffs amended the petition to bring a total of 10 counts against J.D., Linda, Linda as trustee, Delbert, and Fry Grain Enterprises, a business owned by J.D. and Delbert. Just prior to trial, Plaintiffs again amended their petition by removing Mary from multiple counts.[3]

At the close of Plaintiffs' evidence and again at the close of all the evidence, Defendants moved for a directed verdict on numerous grounds. The trial court sustained these motions in part, dismissing all claims by Arthur based on his signing of a release of those claims, dismissing all claims against J.D.'s son Delbert because of lack of evidence of his involvement in any of the asserted wrongs, dismissing the conversion claim against J.D.'s company, Fry Grain, and refusing to submit punitive damages.

As a result of the amendments and the dismissals, the only claims that remained at the close of evidence were Susan and David's claims against J.D. (through Linda as

---

[3] At this point, in Count I, as amended, Arthur, Susan, and David sued J.D., Linda (individually), Delbert, and the trust for fraud and undue influence related to the 1990 deeds. In Counts II through V, Mary and Arthur sued J.D. and Linda (individually) for breach of fiduciary duties, fraud, fraudulent concealment, fraudulent misrepresentation, conversion and replevin, and unjust enrichment related to their alleged misuse of J.D's powers of attorney and Willa and Vincil's CDs and safe deposit box. In Count VI, Mary and Arthur sued Fry Grain for conversion of USDA farm payments, rent, and farm equipment related to Defendants' use of the 200-acre and 160-acre tracts of farmland. In Count VII, Mary and Arthur sued Delbert for unjust enrichment through his receipt of the 160-acre tract of land, but they dropped this count during trial. In Count VIII, as amended, Arthur, Susan, and David sued the trust alleging it was unjustly enriched by the 1990 deeds. In Counts IX and X, Arthur sued J.D., Linda (individually), and Delbert for breach of contract, fraud, fraudulent concealment, and fraudulent misrepresentation relating to Arthur's release of claims agreement.

5

trustee[4]) and Linda (individually) for fraud and undue influence (Count I), Susan and David's claims against Linda as trustee for unjust enrichment relating to the 1990 deeds (Count VIII), and Mary's claims against J.D. and Linda (individually) for breach of fiduciary duty, fraud, fraudulent concealment, fraudulent misrepresentation, conversion and replevin, and unjust enrichment (Counts II through V). The court instructed the jury on these six remaining claims. As to claims against J.D., the court instructed the jury that "defendant J.D. Fry is deceased and [trustee] has been substituted to take his place; therefore if you find against defendant J.D. Fry, your verdict must be against [trustee]."

In Verdicts A and C, the jury found for David and Susan against Linda as trustee for unjust enrichment, awarding each $5,500. In Verdicts B and D, the jury found for David and Susan against Linda as trustee for undue influence but awarded $0.

In Verdict E, the jury found for Mary against Linda as trustee for unjust enrichment, breach of fiduciary duty, fraudulent concealment, and conversion and awarded her $35,000.[5] In Verdict F, the jury found for Mary against Linda individually for unjust enrichment, but awarded Mary $0.

After the verdicts were returned, Plaintiffs moved the court to add to the final judgment an award to Mary of several items of personal property she claims were

---

[4] In Verdicts A through E, Linda is named as the defendant solely in her capacity as trustee as the court-ordered substitute for J.D.; none of the counts underlying these five verdicts made claims against her personally. Verdict F was against Linda personally, but awarded $0 in damages. Susan, David and Mary do not complain about the award of $0 in Verdicts B, D and F, nor did they seek a new trial on these claims or argue that it was inconsistent to find for them on these counts but award no damages, so those issues are not before this Court on appeal.

6

intended for her. Defendants timely filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial.

The trial court did not rule on Mary's motion for an order granting her certain items of personal property, and it overruled Defendants' motion for JNOV. Plaintiffs appealed, Defendants cross-appealed, and the court of appeals consolidated the appeals. This Court transferred the consolidated case after opinion under article V, section 10 of the Missouri Constitution.

## II.    STANDARD OF REVIEW

Defendants argue that the trial court erred in overruling their motions for judgment notwithstanding the verdict on all issues. Plaintiffs argue that the trial court erred in sustaining Defendants' motions for directed verdict on any issue.

A case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence. *Moore v. Ford Motor Co., 332 S.W.3d 749, 756 (Mo. banc 2011).* Whether the plaintiff made a submissible case is a question of law that this Court reviews *de novo. Id.* To determine whether a directed verdict or judgment notwithstanding the verdict should have been granted this Court applies essentially the same standard. *Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. banc 2010).* To determine whether the evidence was sufficient to support the jury's verdict, an appellate court views the evidence in the light most favorable to the verdict. *Moore, 332 S.W.3d at 756.* A motion for directed verdict or JNOV should be granted if the defendant shows

---

[5] This Court does not reach alleged errors in Mary's submission of multiple causes of action in a single verdict director, as that issue is not raised on appeal. *See MAI 2.00.*

7

that at least one element of the plaintiff's case is not supported by the evidence. *Id.;*

*Clevenger v. Oliver Ins. Agency, Inc., 237 S.W.3d 588, 590 (Mo. banc 2007).*

## III.    DISCUSSION

The parties' cross-appeals raise a total of 11 points. Defendants offer multiple grounds on which they believe that the trial court erred in overruling their motion for JNOV. Because this Court's resolution of two of Defendants' points requires the judgment be reversed, it does not reach Defendants' other points. Plaintiffs argue that the trial court erred in sustaining Defendants' motions for directed verdict to the extent that the court refused to submit punitive damages, dismissed Arthur's claims, and dismissed all claims against Fry Grain and Delbert. Plaintiffs also appeal the trial court's refusal to rule on Mary's motion to award her specific personal property.[6] This Court finds each of these points lacks merit.

### A.    *Defendants' Cross-Appeal*

#### i.    *Susan and David's Claims are Time-Barred*

Susan and David claimed unjust enrichment based on J.D.'s alleged fraud in causing Willa and Vincil to sign the 1990 deeds and to prepare the 1990 wills to replace the 1981 will under which Susan and David were to receive remainder interests in the 200-acre tract of land subject to a life estate in Arthur. They assert that J.D. fraudulently concealed the existence of both the 1981 and 1990 wills executed by Willa and Vincil

---

[6] Plaintiffs do not appeal Mary's $0 verdict for unjust enrichment against Linda individually or Susan and David's $0 verdicts for undue influence against Linda as trustee, despite the fact that Susan and David repeatedly refer to conduct that they believe

and the fact that no consideration was given for the 1990 deeds.

Defendants argue that the trial court should have granted their motion for JNOV on Susan and David's unjust enrichment claims because these claims were barred by the statute of limitations. Susan and David counter that, because they allege fraud, the controlling statute of limitations is section 516.120(5), and that their claim is not barred under the latter statute. Section 516.120(5) sets out the statute of limitations for fraud claims as follows:

> Within five years: … (5) an action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

*§ 516.120(5).* Under this statute, all fraud claims must be brought within five years from when the cause of action accrues, which is either when the fraud is discovered or at the end of 10 years after the fraud takes place, whichever occurs first. *Klemme v. Best, 941 S.W.2d 493, 497 (Mo. banc 1997); State ex rel. Stifel, Nicolaus & Co., Inc. v. Clymer, 522 S.W.2d 793, 798 (Mo. banc 1975).*

Consequently, the latest a fraud claim can accrue and the statute of limitations begin to run is 10 years after it is committed, regardless of whether the fraud actually is discovered. *Clymer, 522 S.W.2d at 798.* As *Clymer* explains:

> [T]he cause of action does not accrue from discovery of the fraud. If ten years elapse without discovery of the fraudulent acts, the statute of limitations begins to run and after five years the cause of action is barred, even if the fraud has not yet been discovered.

constituted undue influence. This Court therefore does not discuss further either of these matters.

9

*Id. at 798.* This means that the latest a fraud claim may be brought is 15 years after the fraud occurred. *Id.*

Susan and David argue that this 15-year maximum period is extended further because of J.D.'s alleged fraud in concealing the transfer of property and the existence of the 1990 wills. Although they do not identify a specific statutory basis for this extension, Susan and David implicitly are referring to section 516.280, the general tolling statute,[7] which sets out a "discovery rule" for cases in which a defendant conceals the wrong.

Susan and David's arguments are not well-taken. It is well settled that the general tolling statute does not apply to fraud claims under 516.120(5) because it contains its own, more specific, 10-year discovery rule. As explained in *Anderson v. Dyer*:

> The imposition of Sec. 516.280 onto Sec. 516.120(5) would make the latter ineffective insofar as it undertakes to establish a particular period within which the fraud is deemed to have been discovered and the action to have accrued. Therefore, "(i)f the action is founded upon fraud, as provided in (Sec. 516.120(5)), *** it does not matter whether the party who has defrauded him does anything to prevent his discovery or not."

*456 S.W.2d 808, 813 (Mo. App. 1970), quoting Maynard v. Doe Run Lead Co., 265 S.W. 94, 99 (Mo. 1924). Anderson* noted that section 516.120(5) is the only provision that specifically controls the statute of limitations for fraud and, so, is narrower in scope than the general tolling statute.

This Court implicitly approved *Anderson*'s analysis in *Clymer*. *522 S.W.2d at*

---

[7] Section 516.280 provides:
> If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented.

10

*797-98.* Although *Clymer* specifically involved the separate issue of the time at which a cause of action for fraud accrues, it quoted approvingly *Anderson*'s analysis that section 516.280 does not toll the time for bringing a fraud claim under section 516.120(5) as support for the rule that the time allowed for discovery does not affect the accrual of the cause of action. *Id. at 796-98.* This Court's approval of *Anderson*'s analysis on this point is persuasive. *See also Gilmore v. Chicago Title Ins. Co., 926 S.W.2d 695, 699 (Mo. App. 1996)* (holding "fraudulent concealment does not toll the statute of limitations for fraud beyond what is provided for in § 516.120(5)")*; Graf v. Michaels, 900 S.W.2d 659, 662 (Mo. App. 1995)* (quoting *Anderson* and stating that fraud actions must be brought within 15 years).

Despite this seemingly settled rule, Plaintiffs note that a separate line of cases does suggest that the statute of limitations for fraud may be tolled indefinitely by a defendant's active concealment of the fraud. This separate line of authority had its genesis in *Obermeyer v. Kirshner, 38 S.W.2d 510, 514 (Mo. App. 1931). Obermeyer* recognized a common law exception to the predecessor to section 516.120(5), under which fraudulent concealment of defendant's fraud could toll the statute of limitations for fraud.

*Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 273 (Mo. App. 1989)*, which Plaintiffs cite, relied on *Obermeyer* to state: "If a party takes affirmative action to conceal the fraud, the statute is tolled until the fraud is discovered." Occasionally, the court of appeals has reiterated this same alternative line of analysis, although in none of these cases did the court of appeals actually find tolling. *See, e.g., Misischia v. St. John's Mercy Med. Ctr., 30 S.W.3d 848, 867 (Mo. App. 2000)* (quoting *W.R. Grace* for this

11

rule)*; Cullom v. Crittenton, 959 S.W.2d 915, 918-19 (Mo. App. 1998)* (to same effect)*; and Tilley v. Franklin Life Ins. Co., 957 S.W.2d 349, 351 (Mo. App. 1997)* (same).

To the extent that these cases state that the statute of limitations for fraud under section 516.120(5) is tolled if the fraud is concealed, they conflict with section 516.120, *Clymer*, *Anderson,* and similar cases properly applying section 516.120, and they no longer should be followed. This Court reaffirms its holdings in *Klemme* and *Clymer* that all claims for fraud must be brought within a maximum of 15 years, as provided by section 516.120(5). Neither section 516.280 nor the common law tolls the accrual of a cause of action for fraud.

Applying this analysis here,[8] the alleged fraud in the transfer of the deeds and the preparation of the new will occurred in 1990, and the right to contest this conduct accrued in Willa and Vincil at that time. Assuming, without deciding, that fraudulent concealment were involved here, the statute of limitations would have run 15 years later, in June 2005, and so would have expired prior to Willa's death in November 2005.[9] David and Susan did not sue until 2008. That was too late. In fact, by the time David and Susan obtained an interest in these claims, the claims already were time-barred.

---

[8] On appeal, Plaintiffs' tolling argument is based only on their claim that the statute of limitations was tolled under section 516.120(5) due to J.D.'s fraud. They do not argue that a different statute of limitations applied to specific torts that J.D. is alleged to have committed or that the general tolling statute might apply to one of those other claims. Consequently, this Court does not address those issues.

[9] Defendants note that the transfer of property properly was recorded and published in the newspaper, and they argue that neither they nor Willa or Vincil were under any obligation to alert the Plaintiffs about the terms of the transfer or about the 1990 or 1981 wills.

Willa had no cause of action under either claim to pass on to Susan and David.[10] The trial court, therefore, erred in not granting Defendants' motion for JNOV on the ground that Susan and David's claims based on the 1990 wills and deeds are barred by the statute of limitations.

### ii. The Trial Court Erred in Substituting the Trustee of J.D.'s Trust for J.D. After J.D.'s Death

Defendants assert that the trial court erred in not granting their motion for JNOV on Plaintiffs' claims against Linda, in her capacity as trustee, as substitute for J.D. The trial court permitted Plaintiffs to proceed on their claims against J.D. through the trustee and later instructed the jury: "if you find against defendant J.D. Fry, your verdict must be against Linda Fry, Trustee of John Delbert Fry Revocable Inter Vivos Trust." The jury returned a verdict for Mary against the trustee for $35,000 "under the theory of breach of fiduciary duty, fraudulent concealment, conversion, and/or unjust enrichment."[11] The jury also returned a verdict for Susan and David against the trustee for $5,500 each for unjust enrichment related to the 1990 deeds and wills. But, as discussed above, Susan and David's claims were time-barred.

To the extent that Mary's claims for Counts II through V allege conduct that occurred between 1998 and 2006, including that J.D. abused his powers of attorney and

---

[10] Because Mary ultimately did not submit a claim regarding the 1990 deeds or wills, this analysis is not applied to her. But, because she did sue over these documents initially when she filed her first petition in 2006, Susan and David assert that their claims relate back to Mary's original petition. This Court need not reach this issue because, for the reasons discussed above, the claims are time-barred regardless whether measured by the 2006 or the 2008 filing dates.

[11] See note 5 above regarding the propriety of this joint submission of multiple theories.

13

that J.D. and Linda improperly used J.D.'s powers of attorney to purchase multiple CDs in his own name with Vincil and Willa's funds and to cash other CDs owned by Willa and Vincil that had listed Mary and Arthur as payable-on-death beneficiaries, Defendants do not claim that they are time-barred.[12]  Mary's claims against Linda as trustee are barred, nonetheless, because the trial court erred in substituting Linda, as trustee, for J.D.

Section 537.010 allows tort actions for wrongs done to property interests to survive when the alleged wrongdoer is deceased.  It provides in relevant part:

> Actions for wrongs done to property or interests therein may be brought against the wrongdoer by the person whose property or interest therein is injured … If the wrongdoer is dead, the action also survives and may be brought and maintained in the manner set forth in section 537.021.

§ 537.010.[13]  Section 537.021.1(2) requires that if a defendant dies while a property action is pending, the action, if it continues, must proceed against a personal

---

[12] To the extent that these counts assert misconduct constituting fraud that occurred more than 15 years prior to suit, however, they would be time-barred for the reasons noted in the preceding section.

[13] The term "property or interests therein" has been interpreted broadly to include injuries in tort or injuries to economic interests such as in cases of fraudulent disbursing or taking of money.  *See, e.g., Breeden v. Hueser, 273 S.W.3d 1 (Mo. App. 2008)* (action for monetary loss due to payment for medical services that were not provided due to fraud constituted damage to monetary or economic interest in property and survived); *Foster v. Hesse, 43 S.W.2d 891 (Mo. App. 1931)* (action against defendant for fraudulent disbursement of funds to contractor survived defendant's death); *State ex rel Smith v. Greene, 494 S.W.2d 55 (Mo. banc 1973)* (claim for damage to car in accident would survive death of owner).  *See also Gray v. Wallace, 319 S.W.2d 582 (Mo. 1959)* (survival of actions for personal injury is intended to change common law that personal injury claims abate upon death and will be broadly interpreted to include all claims for personal injury not barred by section 537.030, which provides that "sections 537.010 and 537.020 shall not extend to actions for slander, libel, assault and battery and false imprisonment").

representative of the estate appointed by the probate division,[14] stating in relevant part:

> 1. The existence of a cause of action for an injury to property … which action survives the death of the wrongdoer … shall authorize and require the appointment by a probate division of the circuit court of:
>
>       ….
> (2) A personal representative of the estate of a wrongdoer upon the death of such wrongdoer; …  Should the plaintiff in such cause of action desire to satisfy any portion of a judgment rendered thereon out of the assets of the estate of such deceased wrongdoer, such action shall be maintained against a personal representative appointed by the probate division of the circuit court and the plaintiff shall comply with the provisions of the probate code with respect to claims against decedents' estates ….

As a number of court of appeals cases explain, this means that the probate division appoints a personal representative in cases in which the assets of the estate potentially are involved.  *In re Estate of Hayden, 837 S.W.2d 31, 32 (Mo. App. 1992); Am. Home Assur. Co. v. Pope, 487 F.3d 590, 605 (8th Cir. 2007), citing Hayden, 837 S.W.2d at 32.*[15] Compliance with sections 537.010 and 537.021.1(2) is necessary for a plaintiff to maintain a cause of action against a deceased defendant after her death.  *§ 537.010; § 537.021.1.*

Rule 52.13 requires a plaintiff to serve a motion to substitute a party for the deceased within 90 days after a suggestion of death is filed.  If a party is not properly and timely substituted for the deceased in the manner required by section 537.021.1, Rule 52.13(a)(1) requires that "the action shall be dismissed as to the deceased party without

---

[14] A different procedure applies when the only damages sought are those of the deceased defendant's insurer.  *See § 537.021.1(2).*  That situation does not exist here and is not discussed further.
[15] "A personal representative of an estate is appointed by the probate division of the circuit court in the applicable jurisdiction upon the filing of letters of administration with the court." *Johnson v. Akers, 9 S.W.3d 608, 609 (Mo. banc 2000).*

15

prejudice." *Rule 52.13(a)(1)*.

After J.D.'s death on December 9, 2008, Mary filed suggestions of death on December 15, 2008 and timely moved for substitution on March 9, 2008. But she moved to substitute J.D.'s daughter as a defendant. Defendants objected and directed the court to section 537.021.1(2), which, Defendants noted, controlled the substitution of a deceased defendant and required the substitution of a personal representative.

Although Missouri law provides one year in which to open an estate after the decedent's death, *§ 473.020.2*, the record shows, and the parties do not dispute, that no estate was opened for J.D. before or after the filing of these pleadings and, consequently, no personal representative was appointed. After a hearing, the trial court *sua sponte* substituted J.D.'s widow, Linda, as trustee of the trust, in J.D.'s place. No party argues on appeal, nor could one, that section 537.021.1(2) permitted the substitution of the trustee rather than the personal representative. Instead, Plaintiffs maintain that "it would have been an exercise in futility to open an estate for J.D. Fry since the information available to Plaintiffs was that any theoretical estate would have held no assets." Further, they say, it was the trial court's idea to substitute J.D.'s widow as trustee. Therefore, they argue, it should not be found to be reversible error.

These arguments must fail. Section 537.021 requires the appointment of a personal representative as substitute if a claim for damages to property or property interests against the deceased defendant is to survive. *§ 537.010; Hayden, 837 S.W.2d at 32*. That the deceased party's estate contains little or no property does not change this requirement. This Court's decisions applying section 537.020, which governs the

16

substitution of a personal representative for a deceased party in cases involving personal injury (rather than property) claims, are instructive. In *Darrah v. Foster*, for example, this Court stated that even claims for wrongful death or personal injury when the deceased left *no* property require the appointment of a personal representative:

> Causes of action for wrongful death and for personal injury which survive the death of the alleged tortfeasor are sufficient to require the appointment of an administrator even though the deceased left no property and the sole purpose of the administration is to prosecute actions for death and for personal injury.

*355 S.W.2d 24, 30 (Mo. 1962); see also Clarke v. Organ, 329 S.W.2d 670, 673 (Mo. banc 1959).*

That neither Linda nor Delbert opened an estate for J.D. did not prevent Plaintiffs from opening one. As section 473.020.1 states, "If no application for letters testamentary or of administration is filed by a person entitled to such letters pursuant to section 473.110 within twenty days after the death of a decedent, then any interested person may petition the probate division of the circuit court … for the issuance of letters testamentary or of administration." Plaintiffs, however, did not do so.

Due to Plaintiffs' failure to open an estate and have a personal representative appointed, the trial court was unable to appoint a proper substitute for J.D. Its attempt to substitute instead the trustee of J.D.'s trust is not permitted by Missouri statute as to these claims alleging misconduct by J.D. personally. In the absence of the substitution of a proper party defendant within 90 days after the suggestion of death was filed, Rule 52.13 required the trial court to dismiss the claims against J.D. without prejudice. *Rule 52.13; Rule 44.01(b); Gillespie v. Rice, 224 S.W.3d 608, 612 (Mo. App. 2006).*

17

Because the trial court improperly substituted Linda, as trustee, for J.D., Plaintiffs' causes of action against J.D. did not survive. *§ 537.021.1(2).* The trial court was required to dismiss Plaintiffs' claims against Linda, as trustee, and erred in submitting them to the jury. This Court's resolution of this issue requires reversal of the $35,000 judgment in favor of Mary and provides an alternate ground for requiring reversal of the $5,500 judgments in favor of David and Susan.

### B.     Plaintiffs' Appeal

#### i.      Dismissal of Arthur's Claims

Plaintiffs appeal the trial court's grant of a directed verdict on Arthur's claims. Arthur entered into a release of claims agreement with J.D. in which Arthur released all known and unknown claims against J.D. in return for $100. The trial court found that Arthur entered the release agreement knowingly, voluntarily, and freely, with knowledge of all relevant facts, that the agreement was supported by adequate consideration, and that it released and extinguished all of Arthur's claims. The court further found that Arthur had not met his burden of providing that the release agreement was invalid or unknowingly signed.

On appeal, Arthur argues that these rulings were improper because the record raised questions of fact as to whether he signed what is now purported to be the release agreement and whether he intended to release unknown claims. He alleges this is key because he only signed the agreement in return for being promised he would not be brought into the suit, he did not realize that in signing the agreement he was releasing unknown claims, and that had he known he was doing so or had he known what he knows

18

now about the circumstances of the 1990 deed and will, the $100 he received as consideration would not have been adequate.

The record does not support these arguments. When a party against whom a release is asserted admits signing the release, the release purports to rest upon consideration, and the release is admitted into evidence, the release is presumed to be valid, and the party contesting the release has the burden of proving otherwise. *Hatfield v. Cristopher, 841 S.W.2d 761, 766 (Mo. App. 1992); Blackstock v. Kohn, 994 S.W.2d 947, 954 (Mo. banc 1999)* ("Executed releases are presumptively valid")**.** The release expressly states that, in return for $100, Arthur released "any and all claims … of any kind or nature whatsoever, known or unknown, and particularly on account of all damages." The release further specifically states that it includes any claims pertaining to real estate conveyances between Vincil and Willa and Defendants, transactions by J.D. as attorney-in-fact for Vincil and Willa, and transactions related to the purchase or disposition of the proceeds from any certificates of deposit or contents of the safe deposit box by any of the Defendants.

While Arthur did not initial the first two pages of the three-page release agreement and said "it could be possible" he did not see them and he did not recall signing the release, he also testified that he did sign it, that it contained his signature, and that he did not ask J.D. about the details of Mary's lawsuit before doing so. The release is clear that it releases known and unknown claims. It also is clear that the only consideration is $100; it does not say anything about not drawing Arthur into a lawsuit as a further consideration for the release. And, while Arthur now claims that $100 is not adequate

19

consideration, he alleges no facts and cites no authority that would permit this Court to second-guess the amount he voluntarily chose to take in settlement.

In sum, Arthur alleges the release was invalid for various reasons, but the evidence presented does not support any of the reasons he provides for finding such invalidity. The trial court did not err in finding that he failed to satisfy his burden to show that the release was invalid.

Even assuming this Court had found the release agreement invalid and allowed him to proceed on his claims, however, the claims he sought to assert are the same ones that this Court has found to be barred by the statute of limitations and Plaintiffs' failure to substitute a proper party for J.D. Accordingly, even were the release invalid, he has failed to show prejudicial error.

### ii. Dismissal of Claim Against Fry Grain Enterprises

Sustaining in part Defendants' motion for directed verdict at the close of all the evidence, the trial court dismissed Plaintiffs' conversion claim against Fry Grain Enterprises. Fry Grain operated on the 200-acre and 160-acre tracts of land in which Willa held a life estate. In their petition, Plaintiffs alleged that while farming this land, Fry Grain deprived Willa of United States Department of Agriculture (USDA) farm payments, rent, and income. As a result, Plaintiffs alleged, Mary and Arthur received less money under Willa's 1990 will than they otherwise would have received. Dismissing the claim, the trial court ruled that the claims were not supported by the evidence and the claims alleged conversion of property that is not able to be converted.

Plaintiffs argue that USDA payments are convertible. They argue further that Fry

Grain improperly received USDA payments. Their point relied on fails to explain wherein and why this entitles them to damages, however, as required by Rule 84.04(d), which requires that the point relied on "state concisely the legal reasons for [the] claim of reversible error" and "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." *See Smith v. City of St. Louis, 395 S.W.3d 20, 28 (Mo. banc 2013).*

The argument section of this point is no better. It fails to cite any facts showing that Plaintiffs are entitled to any part of the USDA payments, rent, or income from the land. Plaintiffs' brief focuses on the time period between 1986 and 1988, when Delbert allegedly altered the USDA contract to give Arthur's 50-percent share of the 1987 payment to Fry Grain and Arthur quit farming the land. Plaintiffs admit they knew that the payments went to Fry Grain rather than Willa or Arthur at that time. They do not specifically allege any facts pertaining to conversion that occurred after Arthur stopped farming the land in 1988. Therefore, they make no showing that they brought their claims within the five-year statute of limitations for conversion. *See § 516.120(1).*

And, while Plaintiffs' arguments on appeal seem to be premised on the assumption that this conversion continued as to USDA payments after 1988, their brief fails to cite any specific evidence that any USDA payments were made after 1988 or any authority showing that Mary or Arthur legally were entitled to such payments. (Defendants claim to the contrary.) Plaintiffs' single-paragraph discussion of the alleged conversion of rent and income is particularly bereft of evidence or authority supporting such a claim. It is not this Court's duty to search the record for such evidence or to make Plaintiffs'

21

argument for them.

Further, any claim to the payments accrued in Willa and, therefore, upon her death would belong to Willa's estate, if the claim was not time-barred. Plaintiffs offer no legal authority for their claim that they can sue for these payments because, had the payments gone to Willa, they believe that she would have passed them on in her will.

### iii.    Dismissal of Claims Against Delbert

Only three claims remained against Delbert after Plaintiffs dropped Count VII during trial: one brought by Susan and David for fraud and undue influence arising out of the 1990 deeds and wills and two brought by Arthur arising out of Arthur's release of claims agreement. As discussed above, the trial court properly dismissed Arthur's claims relating to the release agreement. The trial court also properly dismissed Susan and David's claims for fraud based on the 1990 will and deeds because the reasons those claims are barred by the statute of limitations apply equally to Delbert.[16] Accordingly, no submissible claims remained against Delbert.

### iv.    Mary's Equitable Claim

After the jury returned its verdicts, Plaintiffs moved the trial court to add to the final judgment a list of personal property that Mary sought to recover from the family homestead. The motion cited two counts of the petition that sought money damages or, in the alternative, an order for delivery of personal property. The court never entered an

---

[16] As Plaintiffs' claims against Delbert were time-barred, this Court need not further address the additional issue raised as to whether, had the claims not been barred, Plaintiffs failed to make a submissible case that Delbert had any involvement in the alleged fraud or undue influence.

order on this claim, and Plaintiffs argue that this was error.

While Mary argues that the Defendants knew she wanted this property and that she included it on a list she prepared of personal property she wanted from her parents' home, she has not identified why she had a legal or equitable right to receive this specific property, as opposed to a certain percentage of the value of all the property bequeathed. In fact, Plaintiffs cite no law for the proposition that Mary was entitled to an order directing Defendants to give her this property. Further, a review of the record does not show that Willa left Mary this specific property in her will or directed it be held in trust for her or that the will referred to a list of personal property that said these items were to be left to Mary. *See § 474.333* (permitting will to dispose of personal property by separate list). In the absence of some legal or equitable basis for the trial court to be required to award this property to Mary, it did not err in failing to do so.

Even had Mary identified a basis for her claim to these specific items, she chose instead to seek a money judgment for the portion of Willa's property that she claimed should have gone to her. When a party has the right to pursue one of two inconsistent remedies and makes an election, institutes suit, and prosecutes it to final judgment, that party thereafter cannot pursue another and inconsistent remedy. *Trimble v. Pracna, 167 S.W.3d 706, 711 (Mo. banc 2005).* The purpose of the election of remedies doctrine is to prevent double recovery for a single injury. *Whittom v. Alexander-Richardson P'ship, 851 S.W.2d 504, 506 (Mo. banc 1993).* To illustrate:

> [T]he plaintiff whose horse has been stolen can sue the thief for damages or
> for conversion, or he can bring replevin … to get the horse back. But he
> cannot do both, for this would give him both the value of the horse and the

23

horse itself, a form of double recovery.

*Id., quoting DAN B. DOBBS, REMEDIES, § 1.5 at 14 (1973).*

In the petition, Mary requested either money damages or an order for delivery of personal property. Because Mary elected her remedy of monetary damages and received a verdict for those damages, the election of remedies doctrine precludes her from pursuing her alternative remedy.[17]

### v.    *Punitive Damages*

Plaintiffs appeal the trial court's refusal to instruct the jury on punitive damages. Punitive damages may not be awarded in the absence of nominal or actual damages. *See, e.g., Compton v. Williams Bros. Pipeline Co., 499 S.W.2d 795, 797 (Mo. 1973)* ("[A]ctual or nominal damages must be recovered before punitive damages can be recovered")*; Giles v. Riverside Transp., Inc., 266 S.W.3d 290, 296 (Mo. App. 2008)* ("[I]t is fundamental that a determination of liability is a prerequisite to a finding of damages, such that an award of damages cannot survive independent of the accompanying determination of liability. A plaintiff must prevail on his or her underlying claim to submit punitive damages to the jury") (internal citations omitted).

Because this Court reverses the damage judgments against Defendants, Plaintiffs are entitled to no actual damages and the punitive damages issue is rendered moot.

---

[17] While Mary argues that the jury was aware that she would request the specific property after the verdicts were returned and, therefore, did not include the value of that property in its verdict, the instructions directed the jury to return the damages to which Mary was entitled under the evidence; the instructions did not tell the jury to subtract out the value of the specific items. In any event, as noted, Mary elected her remedy of money damages, and her claim was barred for the reasons noted.

*IV.* *CONCLUSION*

The judgment on the jury verdict for Plaintiffs is reversed, and the case is remanded for entry of judgment for Defendants on those claims. The trial court's dismissal of Plaintiffs' other claims by directed verdict, refusal to submit punitive damages, and refusal to enter an order on Mary's equitable claim are affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

Russell, C.J., Breckenridge, Fischer,
Draper and Teitelman, JJ., concur.
Wilson, J., not participating.