Richard B. Teitelman, Judge,
concurring in part and dissenting in part
I respectfully dissent from the per cu-riam opinion to the extent that it reverses the award of punitive damages against the fund and in favor of the City. Before explaining the basis of my disagreement, some context is in order.
As noted in the per curiam opinion, the City filed the underlying lawsuit in 2005. The City’s suit included allegations that it incurred substantial cleanup costs in reliance on the Fund’s fraudulent misrepresentation that the Fund would reimburse the City. After nearly a decade of litigation, the case proceeded to trial, and the jury awarded the City compensatory damages of approximately $172,000. The jury also awarded the City punitive damages of $8 million against the Fund. The circuit court determined that the punitive damage award was not subject to limitation pursuant to the punitive damage cap set forth in section 510.265.1(2)[1] because the statute was enacted after the City’s cause of action accrued. The circuit court sustained the Fund’s motion to remit the punitive damage award to $2,500,000 on due process grounds.
I. The City’s suit against the Fund is not a nullity
The per curiam opinion concludes, erroneously in my view, that there is no statutory authority for the payment of punitive damages from the Fund.[2] If there is no statutory authority for the payment of punitive damages from the Fund, then the analysis should end there. But it does not. Despite years of litigation, the per curiam opinion asserts that the City’s lawsuit against the Fund. is, ■ in effect, a nullity because the City filed suit against the Fund rather than- the Fund’s board of trustees. The per curiam opinion notes that the Fund is merely an account in the state treasury and, as such, is an intangible “it” that “cannot provide coverage, pay claims, or take any other action.” Aside from the-fact that this precise issue was not raised in a motion for directed verdict or in the motion for a new trial and, therefore, is waived, an equally fundamental problem is that hundreds of pages of record in this case demonstrate that, since this lawsuit was commenced over a decade ago, the Fund — the “it” that is incapable of action — has managed to retain counsel, answer the petition, file numerous motions and responsive pleadings, participate in discovery,- litigate this case through the circuit court, the court of appeals and, ultimately, to this Court. Presumably, the Fund’s board of trustees authorized this course of litigation just as it authorized the actions that form the basis of the City’s *762 lawsuit. Rather than holding that, the City’s damages and the Fund’s vigorous defense over the last decade were nothing more than a legal mirage that no one else recognized until now, I would hold that the jury’s verdict and the trial court’s judgment were based- firmly on real consequences caused by real actions undertaken by the Fund per its board of trustees.
II. The affirmance of the compensatory damage award does not justify the reversal of the punitive damage award
After concluding that the City’s lawsuit against the Fund, amounts to nothing more than a suit against an- account — an “it” that can take no action and incur no liability — the per curiam opinion doubles down on this conceptual quandary by affirming the award of compensatory damages and reversing the punitive damages because “the City should not have had a cognizable claim’-’ against the Fund for compensatory damages after all. One would think that, by affirming the jury’s award of compensatory damages, the per curiam opinion would similarly conclude that the award of punitive' damages could be affirmed. That is not the case, however, because the per curiam opinion cites Ellison v. Fry, 437 S.W.3d 762 (Mo.banc 2014), for the proposition that its conclusion that the City should not have had a claim for compensatory damages- means that the City was barred from recovering punitive damages. Ellison is exactly the opposite of this case.
In Ellison, this Court held, “Because this Court reverses the damage judgments against Defendants, Plaintiffs are entitled to no actual and the punitive damages .issue is rendered moot.” Ellison, 437 S.W.3d at 777. A case holding that the issue of punitive damages is moot when an award of compensatory damages is reversed does not establish that a punitive damage award must be reversed when an award of compensatory damages • is affirmed. If .Ellison is relevant at all, it supports the converse proposition that, when compensatory damages are affirmed, the award of punitive damages can also be affirmed.
III. The Fund is statutorily authorized to pay punitive damages
Having determined that the City has filed a real lawsuit against a real defendant for real damages, the issue then becomes whether ^he City’s claims for actual and punitive damages are barred by the Fund’s enabling statutes. The per curiam opinion asserts that section 319.131 “speaks in terms of the Fund’s liability” and limits the Fund to “coverage” of its participants’ cleanup cjosts and third-parties’ claims involving property damage or bodily injury. The per curiam opinion concludes, therefore, that the tort claims alleged by the City are “beyond the coverage” authorized by the Fund’s enabling statutes.
' The per curiam opinion’s rationale conflates the’insurance “coverage” the Fund provides pursuant to section 319.131 with the Fund’s “liability” for its own actions. By characterizing section 319.131 as defining the Fund’s “liability,” the per curiam opinion has refrained what section 319.131 actually says. Section 319.131 outlines the Fund’s obligation to provide insurance “coverage” for cleanup costs and claims for property damage or bodily injury caused by leaking petroleum storage tanks. See sections 319.131.4-5. While section 319.131.5 does prohibit compensation for “loss or damage of an intangible nature, including ..; punitive damages,” this limitation applies to the Fund’s payment of property damage or bodily injury claims “caused by leaking petroleum storage tanks” insured by the Fund. There is simply no language in section 319.131.5 defin- *763 mg or limiting the Fund’s liability for its own actions. Given the lack of any statutory text immunizing the Fund from liability for its own actions, I would not hold that Fund is free to engage in fraud and misrepresentation with impunity.
IV. The punitive damage cap does not apply
As the circuit court determined and the jury found, the Fund is liable for punitive damages. Section 538,305 provides that the section 510.265 cap on punitive damages applies to “all causes of action filed after August 28, 2005.” The City filed its lawsuit in November 2005, after the punitive damages cap became effective. Nonetheless, the circuit court correctly declined to apply section 510.265 because retroactively limiting the City’s damages after the City’s cause of action accrued violates article I, section 13 of the Missouri Constitution.
Article I, section 13 provides that “no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges of immunities, can be enacted.” ^The plain language of article I, section 13 provides that no law “retrospective in its operation ..'. can be enacted.” The plain meaning of this language is that the General Assembly is barred, without exception, from enacting any retrospective laws.
Despite the self-evident, plain meaning of article I, section 13, barring the General Assembly from enacting retrospective laws, this Court has held that the ban on retrospective laws does not mean what it says and, instead, permits the legislature to enact some retrospective laws so long as those laws retroactively change the legal rights of the state or a state-created entity. For instance, in Barton County v. Walser, 47 Mo. 189, 205 (Mo.1871), this Court held that a county could not successfully challenge a statute pursuant , to article I, section 13 because “[n]o vested right of a citizen is interfered with.” Similarly, in Savannah R-II Sch. Dist. v. Pub. Sch. Ret. Sys. of Mo., 950 S.W.2d 854, 858 (Mo.banc 1997), the Court held that a school district could not challenge a statute pursuant to , article I,, section 13 because the ban on retrospective laws “was intended to protect citizens and not the state” and, as a result, “the legislature may constitutionally pass laws .that waive the rights of the state” as well the rights of “instrumentalities of the state established by statute ....” The net result of the Barton County rationale is that article I, section 13 has been judicially amended from “no laws retrospective in operation ... can be enacted” to “some retrospective laws in operation — can be enacted.” These cases are inconsistent with the plain and simple text of article I, section 13 and should no longer be followed. The section 510.265 cap on punitive damages does not apply to this case because retroactively limiting the City’s damages after the City’s cause of action accrued violates article I, section 13 ban on the enactment of retrospective laws.
V. The Fund is- not entitled to remittitur -of the punitive damage award
Although the circuit court correctly declined to apply the punitive damage cap,' the court erred in remitting the punitive damage award to $2.5 million on due process grounds. The Missouri Constitution, article I, section : 10 provides - “[t]hat no person shall be deprived of life, liberty or property without due process of law.” The Fifth Amendment. of the United States Constitution provides: “No person shall be ... deprived of life, liberty, oh property, without due process of law[.]” The Fund is .not a person and, therefore, does not have due process rights. See State ex rel. Brent- *764 wood Sch. Dist. v. State Tax Comm’n, 589 S.W.2d 613, 615 (Mo.banc 1979). Accordingly, the punitive damage award could not be remitted on due process grounds.
I would reverse the circuit court judgment to the extent that it remits the punitive damage award from $8 million to $2.5 million. I would affirm the remainder of the judgment.

. All statutory citations are to RSMo Supp. 2006.

. I agree with Judge Fischer’s conclusion that the issue of Fund’s statutory authority to pay punitive damages was not preserved for appellate review.