

# SUPREME COURT OF MISSOURI
## en banc

SALLY BOLAND, SHERRI LYNN )
HARPER, DAVID GANN, JENNIRAE )
LITTRELL, and HELEN PITTMAN, )
                               )
          Appellants, )
                               )
v. )
                               )
SAINT LUKE'S HEALTH SYSTEM, )
SAINT LUKE'S HOSPITAL OF )
CHILLICOTHE, and COMMUNITY )
HEALTH GROUP, )
                               )
          Respondents. )

*Opinion issued December 10, 2019*

No. SC97412

## APPEAL FROM THE CIRCUIT COURT OF LIVINGSTON COUNTY
The Honorable Daren L. Adkins, Judge

In October 2016, Sally Boland, Sherri Lynn Harper, David Gann, Jennirae Littrell, and Helen Pittman (collectively, "Appellants") filed five separate actions for fraudulent concealment against Saint Luke's Health System, Saint Luke's Hospital of Chillicothe, and Community Health Group (collectively, "Respondents"). Respondents filed motions for summary judgment, arguing Appellants' claims are barred by either the doctrine of res judicata or the five-year statute of limitations for fraud claims set forth in section

516.120(5).[1]  The circuit court granted judgment in favor of Respondents on both grounds, and Appellants appealed.  This Court has jurisdiction over this consolidated appeal under article V, section 10 of the Missouri Constitution.  The facts upon which Appellants now rely to show fraud were discoverable by them in July 2010, October 2010, and January 2011, when Appellants filed their wrongful death petitions involving the same conduct by Respondents.  Accordingly, their present claims for fraudulent concealment are barred by section 516.120(5).

## Background

Litigation between these parties began in 2010 and 2011 when Appellants filed five separate, but similar, wrongful death lawsuits against Respondents.[2]  Those wrongful death petitions alleged that Respondents were directly and vicariously liable for the deaths of each of Appellants' family members at Hedrick Medical Center between February 2002 and April 2002.[3]  Specifically, Appellants' petitions alleged that Jennifer Hall, a former respiratory therapist employed by Respondents, intentionally administered lethal doses of succinylcholine and insulin to Appellants' family members.  Appellants

---

[1]  All statutory references are to RSMo 2016 unless otherwise indicated.

[2]  Appellants' wrongful death lawsuits were not all filed on the same day.  Jennirae Littrell and Helen Pittman filed their wrongful death lawsuits July 14, 2010; Sherri Lynn Harper and David Gann filed their wrongful death lawsuits October 4, 2010; and Sally Boland filed her wrongful death lawsuit January 7, 2011.

[3]  It is undisputed that Appellants were the statutorily authorized persons to bring the original wrongful death lawsuits as provided by section 537.080.  As a result, Appellants also are the proper persons to bring the present fraud claims that Respondents' fraudulent conduct prevented Appellants from timely filing their wrongful death lawsuits.

claimed Hall's misconduct caused at least nine suspicious deaths and at least 18 other medical emergencies at Hendrick Medical Center.

In addition to claims that Respondents were negligent in hiring, retaining, and supervising Ms. Hall, Appellants' 2010 and 2011 wrongful death petitions claimed that Respondents were directly liable for their family members' deaths because Respondents engaged in battery, negligent misrepresentation by concealment, civil conspiracy and conspiracy to commit fraudulent concealment, and fraudulent misrepresentation.[4] Specifically, Appellants alleged Respondents failed to inform the necessary persons and medical committees when Ms. Hall's misconduct was discovered and threatened or coerced hospital employees to conceal information regarding Ms. Hall's misconduct. Further, in order to prevent autopsies that would have revealed the decedents' true causes of death, Appellants alleged that Respondents instructed hospital employees to notify the families that the decedents had died of natural causes. Finally, Appellants alleged Respondents removed or altered the decedents' medical records to prevent the patients' physicians from accessing them, and Respondents impeded law enforcement's investigation of Ms. Hall by failing to investigate or monitor her activities when asked to do so and by failing to preserve evidence relating to her misconduct.

---

[4] These particular claims were brought by Sally Boland, Sherri Lynn Harper, and David Gann in their wrongful death petitions. Jeannirae Litrell and Helen Pittmann brought the following, slightly different, set of claims in their wrongful death petitions: battery, negligence, negligent hiring and supervision, intentional failure to supervise, and civil conspiracy, as well as a Civil RICO (Racketeer Influenced and Corrupt Organizations) violation. The allegations regarding Respondents' conduct were substantially the same in all of the wrongful death petitions.

Respondents filed motions for judgment on the pleadings, arguing Appellants' 2010 and 2011 wrongful death lawsuits were time-barred by the three-year statute of limitations for a wrongful death cause of action under section 537.100. Because the causes of actions began to accrue in 2002, when the decedents died, Respondents argued that the wrongful death petitions had to have been filed no later than 2005. Appellants argued that the three-year statute of limitations was tolled, i.e., did not begin to run, due to Respondents' intentional efforts to fraudulently conceal the true (and actionable) nature of the decedents' deaths. Even though this Court had held that the statute of limitations for wrongful death is not tolled by fraud, concealment, or other improper acts, in *Frazee v. Partney*, 314 S.W.2d 915, 921 (Mo. 1958), Appellants relied on a court of appeals' decision to the contrary, *see Howell v. Murphey*, 844 S.W.2d 42, 47 (Mo. App. 1992) (holding the statute of limitations for a wrongful death cause of action was tolled due to the defendant's fraudulent conduct "until the plaintiffs could, by reasonable diligence, ascertain that they had [a cause of] action").

The circuit court granted Respondents' motions for judgment on the pleadings and dismissed Appellants' wrongful death suits. Appellants appealed. In that consolidated appeal, this Court affirmed the circuit court's judgment, holding the court of appeals' decision in "*Howell* [was] in error[,]" and this Court's decision in *Frazee* controlled. *Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703, 709 (Mo. banc 2015) ("*Boland I*").

On October 18, 2016, after this Court's decision in *Boland I*, Appellants filed five separate (but almost identical) petitions alleging fraudulent concealment by Respondents.

4

These petitions allege, by withholding and concealing knowledge of Ms. Hall's wrongful conduct in causing the decedents' deaths in 2002, Respondents damaged Appellants by causing them to lose their right to timely file wrongful death causes of action. Appellants further allege this injury – i.e., Appellants' inability to bring timely wrongful death lawsuits − did not arise until this Court's decision in *Boland I*.

Respondents filed motions for summary judgment arguing Appellants' claims are barred either by the doctrine of res judicata or by the five-year statute of limitations for fraud claims set forth in section 516.120(5). The circuit court found Appellants' claims against Respondents for fraudulent concealment are barred on both grounds and entered judgment for Respondents. This consolidated appeal follows.

## Analysis

"Whether summary judgment was proper is a question of law." *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 664 (Mo. banc 2010). This Court reviews the grant of summary judgment *de novo* and "will affirm … under any appropriate theory." *Id.* "The Court views the record in the light most favorable to the party against whom judgment was entered and affords that party the benefit of all reasonable inferences." *Id*. Here, Appellants' claims are barred by the five-year statute of limitations for fraud claims. Because the circuit court's judgment can be affirmed on that basis alone, this Court need not (and, therefore, does not) address whether Appellants' claims are also barred by the doctrine of res judicata.

Generally, section 516.120 sets forth a five-year statute of limitation for certain causes of action. Subsection five of this statute provides that among those claims to

5

which the five-year statute applies is: "An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." § 516.120(5). Thus, a claim for fraud must be brought within five years from the date the cause of action accrued, i.e., the date the facts constituting the fraud were discovered or, with reasonable diligence, could have been discovered, but no longer than ten years after they occurred. *Id*. *See also Ellison v. Fry*, 437 S.W.3d 762, 769 (Mo. banc 2014) ("[A]ll fraud claims must be brought within five years from when the cause of action accrues, which is … when the fraud is discovered ….").[5]

Appellants each filed their current petitions against Respondents for fraudulent concealment on October 18, 2016. Therefore, for these causes of action to have been

---

[5]  Appellants argue that, in addition to section 516.120(5), section 516.100, the general provision governing statutes of limitations, applies. Relevant to Appellants' argument, section 516.100 provides, "[c]ivil actions … can only be commenced" upon the accrual of a cause of action that "shall not be deemed to" occur until "the damage resulting therefrom is sustained and is capable of ascertainment[.]" Appellants assert the requirements of section 516.100 and section 516.120 must be read *in pari materia* such that, in order for a fraud cause of action to accrue, "the facts constituting the fraud" must be "discover[ed] by the aggrieved party," section 516.120(5); *and* "the damage resulting [from the fraud must be] sustained and … capable of ascertainment," section 516.100. As support for this proposition, Appellants rely on *Rippe v. Sutter*, 292 S.W.2d 86 (Mo. 1956). But this Court expressly held otherwise in *Ellison*, 437 S.W.3d at 769, when it stated, "Under [section 516.120(5)], all fraud claims must be brought within five years from when the cause of action accrues, which is … when the fraud is discovered …." *See also Hunter v. Hunter*, 50 Mo. 445, 452 (1872) ("Where the case is one of fraud, the statute in no case will commence to run till the discovery of the fraud. … [Only when] a party is in possession of, or has notice of, the main fact constituting the fraud, the statute will commence …."). Additionally, the court of appeals has consistently held the same. *See, e.g.*, *Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 506 (Mo. App. 1999); *Judy v. Ark. Log Homes, Inc.*, 923 S.W.2d 409, 416-17 (Mo. App. 1996); *Gilmore v. Chi. Title Ins. Co.,* 926 S.W.2d 695, 698 (Mo. App. 1996); *Lehnig v. Bornhop*, 859 S.W.2d 271, 273 (Mo. App. 1993); *Schwartz v. Lawson,* 797 S.W.2d 828, 832 (Mo. App. 1990); *Zero Mfg. Co. v. Husch*, 743 S.W.2d 439, 442 (Mo. App. 1987). As a result, to the extent *Rippe v. Sutter* holds otherwise, it should no longer be followed.

6

timely filed under section 516.120(5), the facts constituting Respondents' fraudulent conduct must not have been discovered or reasonably discoverable more than five years before that date, or October 18, 2011. But the very latest date on which Appellants had discovered – or with reasonable diligence should have discovered – the facts underlying their current fraudulent concealment claims was January 7, 2011, because that is the date on which the last Appellant filed her wrongful death petition.[6] As evidenced by the extensive allegations of fraud and fraudulent concealment (and claims of civil conspiracy, fraudulent concealment, and fraudulent misrepresentation by concealment) in Appellants' wrongful death petitions that were filed in 2010 and January 2011, Appellants claimed at that time to know that Respondents had engaged in fraudulent conduct in connection with the deaths of Appellants' family members and sought to conceal the nature of their deaths from Appellants. To every meaningful degree, Appellants made the very same allegations of fraudulent conduct by Respondents in their wrongful death petitions filed in 2010 and 2011 as they do in their fraudulent concealment petitions filed in 2016.

Notably, the only material difference between the two sets of petitions (at least with respect to the claims relating to Respondents' fraud), is the injury Appellants claim they suffered as a result of Respondents' fraudulent conduct.[7] In the wrongful death

---

[6] Although some of the Appellants filed their actions in 2010, this opinion refers to all of the Appellants collectively, and, for ease of reference, the Court uses the latest date upon which all Appellants were deemed to have known the facts constituting fraud. Here, that date is January 7, 2011, when Sally Boland filed her wrongful death petition.

[7] "The elements of fraud are: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity, or his ignorance of its truth; 5) the speaker's intent that it

petitions, Appellants alleged that the injury suffered was the death of decedents, but in the 2016 fraudulent concealment petitions, Appellants allege their injury was the inability to timely file their wrongful death lawsuits. Crucially, Appellants claim that – before this Court handed down *Boland I*, on August 18, 2015 – they **had not discovered** (and reasonably could not have discovered) that Respondents' fraudulent conduct had prevented them from timely filing their wrongful death lawsuits.[8]

But this cannot be. Appellants were well aware they were filing their wrongful death lawsuits out of time when they filed their wrongful death lawsuits in 2010 and 2011. First, the decedents died in 2002; therefore, the three-year statute of limitations in section 537.100 for wrongful death causes of action ran in 2005. Second, Appellants knew of Respondents' fraudulent conduct at the time they filed their wrongful death lawsuits because those petitions contain materially the same allegations that are contained in their 2016 petitions. Third, Appellants knew, or with reasonable diligence should have

should be acted on by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation being true; 8) his right to rely thereon; and, 9) the hearer's consequent and proximately caused injury." *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988). Here, there is no debate that Appellants knew of elements one through eight when they filed their wrongful death petitions in 2010 and 2011. As a result, the only issue was whether, when Appellants filed their wrongful death petitions, they knew (or with reasonable diligence could have known) of element nine – the injury suffered. *Frazee* and its holding with respect to section 537.100 were known to Appellants (or, at the least, reasonably discoverable by them) when they filed their wrongful death petitions.

[8] It is not at all clear that the continued validity of a nearly 60-year-old precedent from this Court – and, consequently, the timeliness of Appellants' wrongful death cases filed in 2010 and 2011 – are the sort of "facts constituting the fraud" that must be "discover[ed]" or reasonably discoverable by Appellants before the statute of limitations on their 2016 fraudulent concealment claims accrued under section 516.120(5). Nevertheless, the Court will assume that they are because Appellants' argument fails even if this is so.

8

known, that Respondents' fraudulent conduct would not toll the three-year statute of limitations for a wrongful death cause of action because this Court had specifically held so in *Frazee*.

Appellants argue that they did not know *Frazee* would control (and, therefore, that their tolling argument would fail) until this Court's decision in *Boland I*. That is incorrect. *Boland I* did nothing extraordinary; it merely applied the most recent controlling Supreme Court of Missouri precedent (i.e., *Frazee*) to the issue at hand. This Court's application of nearly 60-year-old precedent cannot be said to constitute a new "fact," let alone a "fact" that was not reasonably discoverable by Appellants prior to reading this Court's decision in *Boland I*. Instead, it was Appellants' reliance on *Howell* that was in error.[9] It is well settled that, unless "[t]he rulings made, and the legal conclusions reached, by this [C]ourt," have been "criticized, modified, or overruled ***by this [C]ourt***[,]" such rulings are controlling in all lower courts. *State ex rel. Maclay v. Cox*, 10 S.W.2d 940, 946 (Mo. 1928) (emphasis added). *Accord* Mo. Const. art. V, § 2. Thus, as this Court explained in *Boland I*, *Howell* wrongfully held *O'Grady*[10] overruled *Frazee* because *"Frazee* was never referenced or cited by this Court in *O'Grady*[,]" or other subsequent opinions. *Boland I*, 471 S.W.3d at 709.

---

[9] Of course, this Court is not suggesting Appellants were not entitled to argue this Court ought to adopt the reasoning of *Howell*. And there is no doubt it was zealous advocacy that caused Appellants and their counsel to advocate for such a change. But, in advancing the theory set forth in *Howell*, Appellants were not relying on settled law − they were advocating for a change in law.

[10] *O'Grady v. Brown*, 654 S.W.2d 904 (Mo. banc 1983).

9

In short, everything Appellants know now, they knew in 2011 when they filed the last of their wrongful death petitions. They knew of Respondents' fraudulent conduct because it was set forth in those petitions, and they knew that fraud did not toll the wrongful death statute of limitations because *Frazee* was the law in this state long before the deaths of Appellants' family members. *Boland I* did nothing to change that. Stated differently, in bringing their wrongful death causes of action in 2010 and January 2011, Appellants argued that this Court should reject *Frazee*, adopt the reasoning of *Howell*, and hold the three-year statute of limitations for wrongful death is tolled by fraud, concealment, or other improper acts. But, Appellants could have asserted fraudulent concealment claims in 2010 and January 2011 and argued that – because of *Frazee* – Respondents' fraudulent conduct deprived them of the opportunity to file wrongful death claims in a timely manner. Because that argument was available to them then, the five-year statute of limitations in section 516.120(5) prevents them from asserting those fraudulent concealment claims in October 2016.

## Conclusion

For the reasons set forth above, the judgments of the circuit court are affirmed.

_____
Paul C. Wilson, Judge

All concur.

10