Gary D. Witt, Judge
Joseph Baldridge ("Baldridge") appeals from the Jackson County Circuit Court's order granting Kansas City Public Schools' ("KCPS") Motion for a New Trial. KCPS
*704 cross-appeals the order of the trial court denying its Motion for Judgment Notwithstanding the Verdict ("JNOV"). We affirm in part and reverse in part.
Background[1]
Baldridge is a C4-C6 quadriplegic[2] due to a car accident when he was sixteen years old in approximately 1976. He has no functional hand movement, limited upper body strength and use, and no use of his lower extremities. He has used a power wheel chair for mobility for over forty years and uses a customized splint on his arm for limited writing tasks. Baldridge has a bachelor's degree from University of Arizona, a master's degree in Arts and Teaching from Drake University, and a master's degree in Community Health from University of Missouri-Kansas City. Baldridge was hired by KCPS in 2002 to work as a counselor at an alternative school program for students who were suspended from classes for short or long-term periods. During Baldridge's first position with KCPS he worked in an alternative setting where he worked in a room with two co-employees that were available to assist him with tasks whenever it was necessary. When that program was discontinued, KCPS reassigned Baldridge to a traditional school guidance counselor position at James Elementary. Due to Baldridge's inability to scan, copy, and write, he was provided with a dedicated paraprofessional to assist him with tasks he could not perform due to his disability.
Betty Hatcher ("Hatcher") replaced Baldridge's original dedicated paraprofessional in 2008. When Hatcher was assisting Baldridge she would retrieve disruptive or distressed students from classrooms, console them or escort them to the office to meet with Baldridge, review folders and ensure compliance with guidelines, help create the curriculum, set up a room for agitated students to come in and cool off, prepare materials for instruction, arrange lesson plans, take notes, write on whiteboards, and file. Hatcher also assisted Baldridge in attaching his arm brace at various times so he could eat and drink, administering personal medication, adjusting his chest brace, and at the end of each day securing him into his vehicle with a seatbelt and attaching a brace to his arm that allowed him to steer his vehicle. She did not counsel students and was not present during any of Baldridge's confidential counseling sessions with students. Hatcher had other duties outside of assisting Baldridge such as filling in for the school secretary on the secretary's lunch break and monitoring classrooms in case a teacher had to leave due to an emergency.
In December 2012, Baldridge experienced a workplace injury which is not at issue in this case but did require him to be off of work for an extended period of time. In the summer of 2013, he was due to return to work for the 2013-2014 school year. He was advised by KCPS Employee and Labor Relations Specialist Marilyn Overton ("Overton") that KCPS was reviewing his accommodations and she needed him to complete some paperwork. Baldridge provided Overton information regarding his physical limitations. Baldridge also suggested that KCPS obtain a vocational assessment from the Rehabilitation *705 Institute of Kansas City ("RIKC") to assist in evaluating alternative accommodations to meet his needs, which KCPS agreed to do.
After reviewing Baldridge's current accommodations and learning the scope of Hatcher's duties, KCPS' Human Resources Director Mary Laffey ("Laffey"), KCPS' interim superintendent Al Tunis ("Tunis"), and Overton decided to withdraw the accommodation of Baldridge's dedicated paraprofessional. On October 2, 2013, Baldridge and Hatcher were called into a meeting with Overton, a representative for the teachers' union Andrea Flinders, Principal Jo Nemeth ("Nemeth"), and Assistant Superintendent of School Leadership Darrell Davis ("Davis"). Baldridge was told that his paraprofessional accommodation was being removed immediately and that other options would need to be explored, although those new accommodations had yet to be determined. He was placed on administrative leave with pay, effective immediately, and both Baldridge and Hatcher were ordered to pack up their belongings and leave school property. He also received a subsequent letter from KCPS that he was not to enter upon any KCPS properties or he would risk violating KCPS policy.
Pending the vocational assessment at RIKC, Laffey identified a modified assignment at East High School for Baldridge that did not require the same clerical responsibilities as his previous position. She developed a plan with Baldridge for the spring semester so that he could return to work after the winter break. Baldridge accepted the new position. The position was not a counseling position but instead he was assigned to work with severely disabled students. When suggesting the position to Baldridge, Laffey stated that she thought the disabled children might be more comfortable with him due to his own disability. During his time at East High School, he was not included in any professional level development seminars or meetings, was isolated from the counseling department, and was not provided with any formal accommodations. He was also not included in an email regarding a professional development day scheduled for late January 2014. Due to not being informed that it was a professional development day, Baldridge waited outside the school in the cold for a significant period of time for someone to let him into the building. After a custodian let him into the building, Baldridge sat in his assigned classroom for several hours, where he was physically unable to obtain food or drink, remove his coat, or turn on the lights. Finally, he texted his supervisor indicating he needed someone to let him out of the building so that he could return home.
On February 14, 2014, Erin Brown ("Brown") of RIKC conducted Baldridge's vocational assessment. Brown recommended the following list of accommodations to assist Baldridge in fulfilling his job duties:
a. Use of AudioNote iPad app, or another recording device for meetings if a note taker is unavailable.
b. Converting as much paper to electronic format to allow Mr. Baldridge independent access through a computer.
c. Placement in a school that does not require use of an elevator.
d. Use of a paraprofessional or administrative assistant to assist with the management of paper that can't be digitized, as well as being available to assist students to and from the classroom if an elevator is required. This position would not need to be full-time if other accommodations were met.
e. Use of headset or Bluetooth headset for phone conversations. Someone would need to be available to put the headset on at the start of the day and take it off at the end of the day.
*706 She also recommended a paraprofessional be available to assist him with some of his other job responsibilities.
Following Brown's assessment, KCPS reassigned Baldridge to a school guidance counselor position at Phyllis Wheatley Elementary ("Wheatley") for the 2014-2015 school year. This remained his position at the time of trial. KCPS limited his initial assignment to students in classrooms on the same floor as Baldridge's office to avoid use of an elevator. KCPS also implemented a "team-approach" accommodation at Wheatley. Whenever Baldridge needed assistance he was told to contact the Principal, Jose Verduzco ("Verduzco"), who would send someone to assist Baldridge. However, when Baldridge would text or email Verduzco, Baldridge would be told that someone would come help him when they became available. Baldridge never knew which person would be sent to help him and was unsure how long he would have to wait to receive assistance. KCPS also routed Baldridge's computer to the main office printer so the staff there could retrieve printed materials for him.
As a result of Baldridge's transfer to Wheatley, that school had more counselors than the applicable regulations required. This resulted in Baldridge sharing an office with Shirley Washington ("Washington"), another counselor at Wheatley. Over time, Washington voluntarily assumed some daily tasks assisting Baldridge in addition to her own responsibilities. However, KCPS instructed Washington that she could not assist Baldridge with getting into his vehicle and putting on his seatbelt because they were concerned about the potential risk of harm to Baldridge and the public. Baldridge also did not always have assistance in putting on his hand brace for eating, resulting in him sometimes skipping lunch or being only able to eat certain cold foods that he could eat without his brace. He was unable to open doors for himself, which required him to call ahead to the classroom or bang his wheelchair into the classroom door until someone opened the door.
While at Wheatley, Baldridge made multiple unanswered requests for a Bluetooth headset to remedy the telephone issue. Baldridge did receive the software he requested but was not provided the training to utilize it. Overton stated at trial that a training date for the software was set up but Baldridge was absent under the Family Medical Leave Act ("FMLA") at the time it was offered. His position at Wheatley eventually required frequent use of an elevator as he was assigned children on other floors, and he often had to escort children in distress without assistance.
During the time following Baldridge's workplace injury, he experienced additional unrelated absences. During the 2013-2014 school year, Baldridge missed approximately 15 days, excluding the time he was on paid administrative leave. During the 2014-2015 fall semester, Baldridge missed approximately 15 days. Baldridge missed all of the 2014-2015 spring semester except for the first two weeks. Baldridge missed approximately 58 days in the 2015-2016 school year. Many of the absences were approved under the FMLA or general leave of absence allowed under KCPS policy. KCPS never disciplined Baldridge for his absences.
On June 12, 2014, Baldridge filed suit against KCPS, alleging disability discrimination under the Missouri Human Rights Act, section 213.010[3] et seq. ("MHRA")
*707 and seeking punitive damages. At the close of Baldridge's evidence, KCPS filed a motion for directed verdict. The trial court granted in part KCPS' motion for directed verdict by directing out the portion of Baldridge's claim based on the 2015 spring semester when he was unable to work and the portion of his punitive damages claim based on his period of paid administrative leave. At the close of all evidence KCPS filed another motion for directed verdict. The trial court sustained in part KCPS' second directed verdict motion by directing out the portion of Baldridge's claim based upon a dedicated paraprofessional or the removal of the dedicated paraprofessional as a reasonable accommodation.
After the directed verdict rulings and during the jury instruction conference, KCPS offered limiting instructions pursuant to MAI 34.06 concerning the withdrawal of the claims regarding the dedicated paraprofessional in October 2013, Baldridge's period of paid administrative leave, and the 2015 spring semester when Baldridge was unable to work. The trial court accepted them as instruction numbers 10, 11, and 12 respectively. However, the next morning prior to closing arguments, the trial court reversed its ruling on issuing any formal, written withdrawal instructions to the jury. The trial court instead authorized counsel to argue the content of the rejected withdrawal instructions during closing arguments. Baldridge's counsel also argued during rebuttal, "[h]ow in the world are they going to-if they truly, sincerely and meaningfully want to figure out what he needs, do you send him home?" After objection to this argument by KCPS, the trial court then gave an oral instruction to the jury that "there is no claim in this case for damages based upon the plaintiff being placed on paid administrative leave or a claim for damages for the time he was off work and on paid administrative leave."
Also at the instruction conference, the trial court prepared its own verdict director, which was instruction number six.[4] The trial court's verdict director was based on a claim of hostile work environment rather than discrimination based on a failure to provide reasonable accommodation as requested by Baldridge. Both parties objected to the court's proposed verdict director. KCPS objected because it wanted the third element of the hostile work environment claim to reflect the language in Fuchs v. Department of Revenue , 447 S.W.3d 727, 733 (Mo. App. W.D. 2014). Baldridge objected because "this is not a hostile work environment-type case in the way that the case has been traditionally presented" and "the verdict director imposes too high of a threshold on the plaintiff." Baldridge further argued that the "severe and pervasive language that is more appropriate in a harassment-type case rather than a discrimination case based on the failure to accommodate." The trial judge then asked "so everybody except me is objecting to the verdict director; is that right?" The trial judge then *708 stated "Me against all yous [sic]. All right. Your objections are all noted and overruled." The jury was presented with the verdict director as drafted by the trial judge.
The jury found in favor of Baldridge and awarded $230,000 in compensatory damages and $576,075 in punitive damages. On June 10, 2016 KCPS filed a motion for judgment notwithstanding verdict ("JNOV") or, in the alternative, motion for new trial or remittitur with suggestion in support. The trial court granted KCPS' motion in part by awarding a new trial. The trial court's grounds for granting the new trial, as set forth in the trial court's order, were that it erroneously allowed Baldridge to present evidence regarding the removal of the dedicated paraprofessional, it erroneously allowed Baldridge to present evidence of several actions on the part of KCPS which did not legally constitute unlawful or unreasonable lack of accommodation, it erroneously allowed Baldridge's claim of failure to provide accommodations for eating and drinking assistance as proof of hostility and cruelty, the evidence did not support submission of a punitive damage claim, and the court erroneously failed to allow the withdrawal instructions submitted by KCPS relating to the claims involving the withdrawal of the dedicated paraprofessional accommodation and paid administrative leave. The trial court denied all other forms of relief requested by KCPS. This timely appeal followed with cross appeals by both parties.
I. Baldridge's Appeal
Baldridge raises three points on appeal. In Baldridge's first point on appeal, he argues that the trial court erred in ordering a new trial on the basis that it was error to allow the previously provided disability accommodations into evidence because regulations under the MHRA[5] provide that prior accommodations should be considered in determining the reasonableness of current accommodations and hostile work environment claims require the jury to consider the totality of the evidence, including all conduct of the employer, whether or not the conduct involves the provision or deprivation of a reasonable accommodation. In Baldridge's second point on appeal, he argues that the trial court erred in ordering a new trial on the basis that Baldridge failed to make a submissible case for punitive damages because the remedy for failure to make a submissible case for punitive damages is not to grant a new trial. In Baldridge's third point on appeal, he argues that the trial court erred in ordering a new trial on the basis that it was error not to have allowed KCPS' withdrawal instructions on the withdrawal of Baldridge's prior accommodations and his placement on administrative leave because the instructions misstated the law and failure to allow the instructions did not result in prejudice.
Standard of Review
"A trial court has great discretion in determining whether to grant a new trial." Duckett v. Troester , 996 S.W.2d 641, 646 (Mo. App. W.D. 1999) (overruled on other grounds by Spiece v. Garland , 197 S.W.3d 594 (Mo. banc 2006) ). "Its decision is presumed to be correct and will be reversed on appeal only for an abuse of discretion." Id. "An abuse of discretion occurs where the trial court's ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of *709 careful consideration." Id. "It cannot be said that the trial court abused its discretion where reasonable persons could differ over the propriety of its ruling." Id. (quoting McGraw v. Andes , 978 S.W.2d 794, 801 (Mo. App. W.D. 1998) ). "Appellate courts should be more liberal in upholding a grant of a new trial than in awarding a new trial when the trial court denies the motion." Nadolski v. Ahmed , 142 S.W.3d 755, 764 (Mo. App. W.D. 2004) (internal citations and quotation marks omitted). However, the granting of a motion for a new trial can be an abuse of discretion where it is based on findings that are not substantially supported by the record. Duckett , 996 S.W.2d at 646.
"In order for the trial court to grant a motion for a new trial, the error complained of as a basis for the motion must be prejudicial to the party seeking the new trial." Balke v. Cent. Mo. Elec. Coop. , 966 S.W.2d 15, 25 (Mo. App. W.D. 1997). A new trial is available only upon a "showing that trial error or misconduct of the prevailing party incited prejudice in the jury." Kan. City v. Keene Corp. , 855 S.W.2d 360, 372 (Mo. banc 1993).
The trial court's broad discretion when ruling on a motion for a new trial applies to fact questions, not questions of law, and the burden is on the appellant to prove that the trial court abused its discretion when it granted the motion for a new trial for the stated reasons. Koppe v. Campbell , 318 S.W.3d 233, 240 (Mo. App. W.D. 2010) (citation omitted). "On appeal from an order granting a new trial for a specific reason the burden is on appellant to show that the court erred in sustaining the motion upon the ground specified." Andersen v. Osmon , 217 S.W.3d 375, 378 (Mo. App. W.D. 2007) (internal quotation marks and citation omitted). When the trial court assigns several grounds for the grant of a new trial, the action must be upheld on appeal if any one of the grounds is valid. Leo Journagan Constr. Co. v. City Utils. of Springfield , 116 S.W.3d 711, 722 (Mo App. S.D. 2003). "A single ground of error, if prejudicial, appropriately warrants the grant of a new trial." Id.
Analysis
Point One
Baldridge argues in his first point on appeal that the trial court erred in granting a new trial on the basis that it was error to allow the admission of Baldridge's prior disability accommodations into evidence since past accommodations should be considered in determining what currently would constitute reasonable accommodations and a claim of hostile work environment requires the jury to consider the totality of the evidence, including prior accommodations. Baldridge first argues that the trial court erred in granting a new trial on the basis that it was error to allow admission of the evidence regarding the withdrawal of his previously provided dedicated paraprofessional.[6] Baldridge argues that evidence of the removal of his paraprofessional was evidence that the jury should be able to consider when determining *710 if Baldridge was subject to a hostile work environment.[7]
To establish a prima facie case under the MHRA the plaintiff must show that: (1) he is legally disabled; (2) he was discharged or suffered an adverse employment action; and (3) the disability was a factor in his discharge or adverse employment action. Harvey v. Mo. Dept. of Corrections, 379 S.W.3d 156, 160 (Mo. banc 2012). "A successful claim of hostile work environment discriminatory harassment requires proof that: (1) the plaintiff is a member of a group protected by the MHRA; (2) the plaintiff was subjected to unwelcome protected group harassment; (3) the plaintiff's membership in the protected group was a contributing factor in the harassment; and (4) a term, condition, or privilege of the plaintiff's employment was affected by the harassment." Fuchs , 447 S.W.3d at 732 (citing to Hill v. City of St. Louis , 371 S.W.3d 66, 70-71 (Mo. App. E.D. 2012) ). Harassment "creates a[n] [actionable] hostile work environment when discriminatory conduct either creates an intimidating, hostile, or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." Id. at 733. "In assessing the hostility of an environment, we look to the totality of the circumstances." Cooper v. Albacore Holdings, Inc. , 204 S.W.3d 238, 245 (Mo. App. E.D. 2006). In employment discrimination cases direct evidence is uncommon and the plaintiff may rely on circumstantial evidence to prove his case. Ellison v. O'Reilly Auto. Stores, Inc. , 463 S.W.3d 426, 435 (Mo. App. W.D. 2015).
The trial court found that a dedicated fulltime paraprofessional is not a reasonable accommodation as a matter of law and therefore Baldridge should not have been able to present evidence or argue that withdrawing the dedicated fulltime paraprofessional constituted evidence of harassment or a hostile work environment.[8] In reaching this conclusion, it appears that the trial court was using the definition of a "dedicated paraprofessional" argued by KCPS meaning a fulltime person dedicated solely to assisting Baldridge in the performance of his duties. KCPS argues that because the accommodation of a full time dedicated paraprofessional was not reasonable in the first place, the removal of that unreasonable accommodation cannot be considered in determining if the removal was discriminatory.[9] Even using KCPS' definition, *711 there is no support for the proposition that the only conduct relevant to establishing a hostile work environment in the case of disability discrimination is the removal of (or failure to provide) reasonable accommodations. Paragraph third of the verdict director prepared by the trial court required the jury to determine whether Baldridge was subjected to "conduct that was sufficiently severe or pervasive to alter the terms, conditions, or privileges of [Baldridge's] employment by having the purpose or effect of unreasonably interfering with plaintiff's work performance." Paragraph fourth of the verdict director then required the jury to determine whether Baldridge's "disability was a contributing factor in such conduct." The question for the jury was whether Baldridge's disability was a contributing factor behind KCPS' conduct , which plainly included the removal of accommodations Baldridge once had. The question for the jury, as the case was submitted to them by the trial court, was not whether KCPS' conduct was (or was not) the removal or failure to provide a reasonable accommodation. Though paragraph third required the jury to find that the totality of KCPS' conduct "unreasonably interfered" with Baldridge's work performance, again, given the tempering effect of paragraph fourth, which requires a finding that Baldridge's disability was a contributing factor in KCPS' conduct, it does not follow that "unreasonably interfering with work performance" is limited as a matter of law to the removal (or failure to provide) reasonable accommodations. In short, the removal of a paraprofessional (whether dedicated or fulltime) who had been provided by KCPS for over eight years was plainly "conduct." It was for the jury to decide if this, and other conduct by KCPS was sufficiently severe and pervasive as to alter the terms, conditions, or privileges of Baldridge's employment by having the purpose of unreasonably interfering with his work performance. And it was for the jury to decide if Baldridge's disability was a contributing factor in KCPS' conduct. We find that the removal of Baldridge's dedicated paraprofessional, which had been provided to him by KCPS for over eight years, is conduct the jury could consider in determining if Baldridge was subjected to a hostile work environment. It was error as a matter of law, and thus an abuse of discretion, for the trial court to conclude to the contrary.
Next Baldridge argues that the trial court erred in granting a new trial on the basis that it was error to allow him to argue that failure to provide him assistance in eating and drinking created a hostile work environment, when evidence was provided by KCPS that an employee was designated to help him with these tasks and there was no evidence that he was ever denied the needed assistance. The trial court cited to Rask v. Fresenius Medical Care North America , 509 F.3d 466 (8th Cir. 2007), in finding that providing assistance to Baldridge for eating and drinking was not a reasonable accommodation and therefore not actionable or admissible.
Baldridge testified that during times when his job duties required him to assist students over the lunch hour he would have nobody to assist him later in the day to eat and he would have to miss his lunch on those days. He also testified that he felt like he had to fend for himself even with things like eating lunch. For the reasons we have already explained, it was for the *712 jury to determine whether the removal of Baldridge's paraprofessional unreasonably interfered with his work performance-an assessment which permitted consideration of the practical effect on Baldridge of deprivation of a dedicated paraprofessional. Slow or no response to an employees' request for assistance, whether it is a reasonable accommodation to provide such assistance or not, is conduct that the jury may consider when determining if KCPS created a hostile work environment, as it is the employers motivation in doing so which is relevant. It was legal error, and thus an abuse of discretion, for the trial court to conclude to the contrary.
Lastly Baldridge argues that the trial court erred in granting a new trial on the basis that it was error to allow him to present evidence that he was forced to use a speakerphone in a room where his conversations would be overheard by other persons. He argues that his position as a counselor required him to be able to confidentially communicate regarding student's needs. The trial court found that such an arrangement was not unreasonable or unlawful and therefore should not have been admitted as proof of a hostile work environment. However, as was previously pointed out there is no authority for the proposition that the jury can only consider conduct amounting to the withdrawal or refusal of reasonable accommodations in determining whether a disabled employee has been subjected to a hostile work environment.
It was legal error and an abuse of discretion for the trial court to grant a new trial based on the erroneous conclusion that regarding Baldridge's prior accommodations were inadmissible and on the erroneous conclusion that the only conduct relevant for the jury's consideration was conduct amounting to the refusal to afford reasonable accommodations. Point One is granted.
Point Two
In Point Two, Baldridge argues that the trial court erred in granting a new trial on the grounds that he failed to make a submissible cause of action for punitive damages because failure to make a submissible cause of action is not grounds for a new trial. Baldridge further argues that there was clear and cogent circumstantial evidence to submit a claim for punitive damages.
Section 213.111 permits the recovery of punitive damages in an action brought under the MHRA. Ellison , 463 S.W.3d at 434. "Whether there was sufficient evidence to support an award for punitive damages is a question of law which is review de novo. " Poage v. Crane Co. , 523 S.W.3d 496, 515 (Mo. App. E.D. 2017). An award of punitive damages requires proof (1) of an element of outrageous conduct, and (2) the defendant acted with a "willful, wanton or malicious culpable mental state." Id. For punitive damages to be presented to a jury, there must be clear and convincing evidence demonstrating a high probability the "defendant's conduct was outrageous because of evil motive or reckless indifference." Ellison , 463 S.W.3d at 434. Direct evidence is uncommon in employment discrimination cases and the plaintiff may rely on circumstantial evidence to prove his case. Id. at 435. The evidence offered to support the underlying substantive claim is not mutually exclusive from that evidence which supports the plaintiff's additional claim for punitive damages and may be used in determining whether the defendant acted with evil motive or reckless indifference. Id.
The trial court found that Baldridge's punitive damage claim could not be supported by the removal of his dedicated paraprofessional because it was not a reasonable accommodation in the first *713 place. However, since the removal of Baldridge's dedicated paraprofessional can be considered in determining if a claim of hostile work environment has been established, it can be considered in connection with a claim of punitive damages. Further, there was additional evidence presented regarding Baldridge's treatment by KCPS including his exclusion from professional development, his lack of inclusion as a staff member, lack of information regarding when the school would be closed causing him to sit outside in the cold unable to get into the building, Baldridge's continued unanswered requests for further accommodations, his placement on paid administrative leave due to the removal of his paraprofessional with no plan as to what accommodations may be used to replace the withdrawn accommodation, notifying him that if he entered KCPS property he was subject to discipline and his placement in a position different from the one he held for over ten years. We find this evidence sufficient to establish a submissible claim for punitive damages to the jury. As a result, we need not address whether the appropriate remedy in the face of insufficient evidence to support a punitive damage award is a new trial, as opposed to the grant of a motion notwithstanding the verdict. Point Two is granted.
Point Three
Baldridge argues in his third point on appeal that the trial court erred in granting a new trial on the basis that it should have allowed KCPS' withdrawal instructions on the withdrawal of Baldridge's prior accommodations and placement on administrative leave because the failure to allow these instructions did not prejudice KCPS. Baldridge argues that KCPS was not prejudiced because Baldridge's prior paraprofessional accommodation was evidence that the jury should have been allowed to consider and the jury received oral limiting instructions from the trial court regarding Baldridge's administrative leave claims, therefore KCPS was not prejudiced.
"Withdrawal instructions may be given when evidence on an issue has been received, but there is inadequate proof for submission of the issue to the jury; when there is evidence presented which might mislead the jury in its consideration of the case as pleaded and submitted; when there is evidence presented directed to an issue that is abandoned; or when there is evidence of such character that might easily raise a false issue." Brizendine v. Bartlett Grain Co., L.P. , 477 S.W.3d 710, 715 (Mo. App. W.D. 2015). A trial court "may not withdraw evidence if it concerns an issue still before the jury." Klaus v. Deen , 883 S.W.2d 904, 907 (Mo. App. E.D. 1994). Failure to provide withdrawal instructions must be prejudicial in order to grant a new trial. Carter v. Norfolk & W.Ry. , 708 S.W.2d 306, 310 (Mo. App. E.D. 1986). "Evidence is considered prejudicial if it tends to lead the jury to decide the case on some basis other than the established propositions in the case." Nolte v. Ford Motor Co. , 458 S.W.3d 368, 383 (Mo. App. W.D. 2014) (internal quotations omitted).
As stated above, KCPS provides no authority to explain why the removal of Baldridge's paraprofessional after eight years should not be conduct the jury was entitled to consider in determining whether Baldridge was subjected to a hostile work environment. There is no authority that requires the jury to only consider the removal of reasonable accommodations to determine if a hostile work environment was present. Limiting instructions regarding the removal of Baldridge's paraprofessional would not have been appropriate under the facts of this case.
However, even if limiting instructions were necessary, KCPS was not prejudiced *714 because it was allowed to argue in closing that the removal of Baldridge's paraprofessional was not to be considered. In closing KCPS stated:
[T]here are two things that have been discussed heavily; his paid leave and not being awarded a full-time para. Him being placed on paid leave, the Court has decided that you cannot consider that in making your-you cannot consider that because that was not a discriminatory act. Placing him on paid leave was not a discriminatory act. And the Court has decided that. Secondly, not awarding him a full-time para is not discrimination. The Court has also decided that. So those are two things the Court has told-the Court is telling you are not basis for discrimination.
KCPS reiterated later in its closing argument:
I'm telling you and the Court is telling you, taking away his full-time paraprofessional, placing him on paid leave is not discrimination.
Further, the trial court gave an oral limiting instruction from the bench regarding Baldridge being placed on administrative leave.[10] Therefore, even if limiting or withdrawal instructions had been proper, Baldridge was not prejudiced because the trial court gave a verbal limiting instruction regarding the paid administrative leave and KCPS was provided the opportunity to argue that the removal of Baldridge's paraprofessional was not to be considered.[11] Point Three is granted. Finding no grounds to support the order of a new trial, the trial court's order granting a new trial is reversed.
II. KCPS' Cross-Appeal
KCPS raises three points on its cross-appeal. KCPS argues in its first point on appeal that the trial court erred in denying KCPS' motion for JNOV because Baldridge failed to present substantial evidence in support of every element of a claim for hostile work environment since Baldridge was unable to perform an essential function of his job by failing to have reliable attendance. KCPS argues in its second point on appeal that the trial court erred in denying its motion for JNOV because Baldridge failed to present substantial evidence in support of every element of a claim for hostile work environment since Baldridge never pled a claim of hostile work environment. KCPS argues in its third point on appeal that the trial court erred in denying its motion for JNOV because Baldridge failed to present substantial evidence to support every element of a claim for punitive damages.
Standard of Review
"A case may not be submitted unless each and every fact essential to *715 liability is predicated on legal and substantial evidence." Ellison v. Fry , 437 S.W.3d 762, 768 (Mo. banc 2014). "Whether the plaintiff made a submissible case is a question of law that this Court reviews de novo. " Id. "A motion for directed verdict or JNOV should be granted if the defendant shows that at least one element of the plaintiff's case is not supported by the evidence." Id. "This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion." Smith v. Brown & Williamson Tobacco Corp. , 410 S.W.3d 623, 630 (Mo. banc 2013). "A judgment notwithstanding the verdict is a drastic action that can only be granted if reasonable persons cannot differ on the disposition of the case." Poage v. Crane Co. , 523 S.W.3d at 507 (quoting Delacroix v. Doncasters, Inc. , 407 S.W.3d 13, 39 (Mo. App. E.D. 2013) ).
Analysis
Point One
In Point One, KCPS argues that the trial court erred in denying its motion for JNOV because Baldridge failed to present substantial evidence in support of every element of a claim for hostile work environment since he was unable to perform the essential functions of his job by reliable and consistent job attendance. KCPS argues that Baldridge's chronic absenteeism precluded any finding that he is statutorily disabled.
KCPS cites to Medley v. Valentine Radford Communications, Inc. , in support of its arguments. 173 S.W.3d 315 (Mo. App. W.D. 2005). In Medley , Medley sued her former employer alleging that she was discharged because of a disability in violation of the MHRA. Id. at 318. Prior to being discharged, she missed approximately 15 weeks, largely without prior approval, during the only 14 months of her employment. Id. at 317-18. This Court found that based on Medley's excessive absenteeism there was "no reasonable accommodation that would allow Ms. Medley to do her job. So Ms. Medley was not disabled under the MHRA and thus failed to prove an elements of her claim." Id. at 325.
Most of Baldridge's absences were covered under FMLA or general leaves of absences allowed under KCPS' policy. Baldridge had been employed with KCPS for nearly 15 years and was never disciplined for excessive absences. Further, only four years of his attendance records were provided to the court. Unlike the large amount of unauthorized absences during Medley's very brief employment, most of Baldridge's absences were authorized under KCPS policy or federal law and only the most recent four years of Baldridge's employment records were provided out of his 15 years employment. Additionally, whether Baldridge is disabled as provided under the MHRA is a factual finding made by the jury. "We defer to the jury's findings of facts and credibility determinations." Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London , 400 S.W.3d 463, 472 (Mo. App. E.D. 2013). KCPS' first point on cross-appeal is denied.
Point Two[12]
In Point Two, KCPS argues that that the trial court erred in dismissing *716 its motion for JNOV because Baldridge failed to present substantial evidence in support of every element of a claim for hostile work environment in violation of the MHRA and therefore relied on an unpled theory. KCPS argues that the since Baldridge did not plead a claim for hostile work environment, it was prejudiced because it was unable to prepare for or even try the case with knowledge of the claim eventually submitted to the jury. KCPS ignores that Baldridge also objected at trial to the verdict director the trial court drafted and used to submit the case to the jury.
However, a review of the petition at issue shows that Baldridge did in fact plead the elements of a claim for hostile work environment. "The Court reviews the petition to see if the facts alleged, given their broadest intendment, meet the elements of a cause of action that is recognized or that might be adopted." Peters v. Wady Indus., Inc., 489 S.W.3d 784, 789 (Mo. banc 2016). "A successful claim of hostile work environment discriminatory harassment requires proof that: (1) the plaintiff is a member of a group protected by MHRA; (2) the plaintiff was subjected to unwelcome protected group harassment; (3) the plaintiff's membership in the protected group was a contributing factor in the harassment; and (4) a term, condition, or privilege of the plaintiff's employment was affected by the harassment." Fuchs , 447 S.W.3d at 732 (citing to Hill v. City of St. Louis , 371 S.W.3d 66, 70-71 (Mo. App. E.D. 2012) ). Harassment "creates a[n] [actionable] hostile work environment when discriminatory conduct either creates an intimidating, hostile or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." Id. at 733.
In Baldridge's amended petition he pleads that he is a member of a group protected by the MHRA by stating: "[Baldridge] is a C4-C6 quadriplegic. He has no function of his fingers/hands or upper extremities. Additionally he has no function of his lower extremities." He also pleads that he was subject to unwelcome group harassment by experiencing conduct that has the effect of unreasonably interfering with his work performance when he states:
23. In September of 2013, [Baldridge] was informed that [KCPS] was taking away his paraprofessional and that he would no longer be provided with one. He was also placed on administrative leave, with pay, pending KCPS' determination of the accommodations they would provide for [Baldridge].
...
26. In mid-December of 2013, [Baldridge] received a temporary placement at East High School. [Baldridge] was not provided with a job description and was not provided with a time frame for this temporary assignment.
...
28. In this temporary position as well as during the time period [Baldridge] was on paid administrative leave, [Baldridge] was denied the opportunity to attend professional development meetings and seminars.
29. Professional development meeting and seminars had always been part of the duties and responsibilities of [Baldridge's] counseling position.
...
36. [KCPS] did nothing to accommodate [Baldridge] in his temporary position.
...
40. To date, [Baldridge] has never been provided information from [KCPS] as to the reasonable accommodations they intend to provide. Furthermore, [Baldridge] has not received a permanent job assignment, despite the 2014-2015 *717 school year contracts having been awarded in Mid-May.
Baldridge pleads in his amended petition that his membership in the protected group was a contributing factor in the harassment when he states: "[Baldridge's] disability was a contributing factor in the discriminatory conduct he suffered and experienced." Lastly Baldridge pleads that a term, condition, or privilege of his employment was affected by the harassment when he states: "[Baldridge's] terms, conditions and privileges of employment were and are adversely affected." Given the facts pled by Baldridge their broadest intendment, he pled a claim for hostile work environment and there was evidence to support each element of the claims submission to the jury. KCPS cannot argue that it was not given an opportunity to prepare for a claim of hostile work environment because it was pled by Baldridge and the evidence supported its submission.[13] Point Two is denied.
Point Three
In Point Three, KCPS argues that the trial court erred in dismissing its motion for JNOV because Baldridge failed to present substantial evidence in support of every element of a claim for punitive damages since there was no evidence of evil motive or reckless indifference.
We address this argument in our analysis of Baldridge's third point on appeal. We will not repeat the same analysis here. Supra , point two raised by Baldridge is sustained. Point Three raised by KCPS is denied.
Conclusion
The trial court's order granting a new trial is reversed. The trial court's order denying KCPS' motion for JNOV is affirmed. The cause is remanded to the trial court for entry of judgment on the jury's verdict. Because of the trial court's grant of KCPS' new trial motion it did not reach the determination of reasonable attorney's fees and costs following the jury's verdict. On remand the trial court shall determine and assess Baldridge's reasonable attorney's fees and costs pursuant to section 213.111.2 prior to its entry of final judgment.
All concur

When appealing a grant of a new trial, we view the evidence in the light most favorable to the trial court's order. Precision Elec., Inc. v. Ex-Amish Specialties, Inc. , 400 S.W.3d 802, 808 (Mo. App. W.D. 2013). When appealing a denial of a motion for JNOV, we view the evidence in the light most favorable to the verdict. Ellison v. Fry , 437 S.W.3d 762, 768 (Mo. banc 2014).

The C1-C8 vertebrae form the cervical spine which is located from the base of the skull to the base of the neck.

All statutory citations are to RSMo 2016 (supplemented through December 31, 2016), unless otherwise noted. The Missouri Human Rights Act was modified in multiple ways by the Legislature on August 28, 2017. Those modifications are inapplicable to this appeal except as otherwise noted.

Verdict director, instruction number six as given to the jury read as follows:
Your verdict must be for plaintiff and against defendant Kansas City Public Schools if you believe:
First , plaintiff has a physical impairment that substantially limits one or more of plaintiff's major life activities, and
Second , such impairment would not interfere with performing the job in question if provided reasonable accommodation, and
Third , plaintiff was subjected to conduct that was sufficiently severe or pervasive to alter the terms, conditions, or privileges of plaintiff's employment by having the purpose or effect of unreasonably interfering with plaintiff's work performance, and
Fourth , such disability was a contributing factor in such conduct; and
Fifth , this directly caused or directly contributed to cause damage to plaintiff.

8 C.S.R. 60-3.060(1)(G)(3)(C) ("In determining whether an accommodation is reasonable, factors to be considered include, but are not limited to: ... C. The good faith efforts previously made to accommodate similar disabilities"). All regulatory references are to the Missouri Code of State Regulations as currently updated unless otherwise indicated.

The parties appear to each define what constitutes a "dedicated paraprofessional" differently. As used throughout their briefing KCPS appears to argue that this means the providing of a fulltime employee whose sole job it is to provide assistance to Baldridge. KCPS argues that to require a fulltime employee to solely provide assistance to Baldridge does not legally constitute a reasonable accommodation. Baldridge appears to define a "dedicated paraprofessional" as having the same person provide the assistance he needs each day, while allowing that person to perform other tasks unrelated to providing assistance to him. He argues that this does constitute a reasonable accommodation under these facts. Neither party addresses how the other party's definition may affect the legal analysis in this case.

It is arguable that KCPS waived any objection to the accommodation of the paraprofessional as they failed to object to this evidence on multiple occasions and it affirmatively placed significant evidence regarding the paraprofessional before the jury in its own case.

In determining whether an accommodation is reasonable under Missouri law, we look to the size and nature of the employer, the number and type of its facilities, and the structure and composition of its work force compared to the costs of providing the accommodation. City of Clayton v. Missouri Com'n on Human Rights, 821 S.W.2d 521, 531 (Mo. App. E.D. 1991). Baldridge had been provided a paraprofessional for eight years and there was evidence that the cost of providing the paraprofessional to Baldridge was miniscule when compared to the KCPS budget. We do not have to reach the issue of whether the providing of a dedicated paraprofessional was a reasonable accommodation under either party's definition of that term as the question in this case required the jury to consider the collective conduct that Baldridge was subjected to by KCPS and the motivation of KCPS in engaging in that conduct, including the removal of that accommodation.

To support its argument that a full time dedicated paraprofessional was per se an unreasonable accommodation, KCPS cites to Jewell v. Blue Valley Unified Sch. Dist. , 210 F.Supp.2d 1241, 1250 (D. Kan. 2002). A ruling of a single federal trial judge is not binding on this court. Further the legal issue presented in Jewell is distinguishable from the issues we now face. Under Missouri law, whether any particular accommodation is reasonable or unreasonable is dependent on the facts of the individual case. Lomax v. DaimlerChrysler Corp., 243 S.W.3d 474, 481 (Mo. App. E.D. 2007).

The trial court instructed: "Ladies and gentlemen, there is no claim in this case for damages based upon the plaintiff being placed on paid administrative leave or a claim for damages for the time he was off work on paid administrative leave."

Ironically, given our ruling on Baldridge's first point on appeal, the evidence KCPS was permitted to argue should not be considered by the jury was, in fact, properly in evidence, and should have been permissibly considered by the jury. If anyone was prejudiced here, it was Baldridge, who was forced to argue his case as a hostile work environment case, and who was then denied the full and fair ability to do so based on directions given to the jury that ostensibly prohibited from considering conduct that should have been considered pursuant to paragraphs third and fourth of the verdict director. Baldridge has elected to stand with his verdict, notwithstanding this seemingly unfair turn of events at trial. But that fact does not warrant a corollary conclusion that KCPS was prejudiced. To the contrary. KCPS was given the effective benefit of limiting "instructions" regarding what the jury could (or could not) consider that were not supported by the law, given the manner in which this case was submitted.

KCPS second point on appeal would have been more appropriately presented as a claim of instructional error instead of claim of insufficiency of the pleadings. KCPS seems at times to be arguing that the verdict directing instruction given by the trial court was error. However, this is not the claim of error raised in KCPS' point on appeal so we need not address it. We review only KCPS' argument properly set forth in the point relied on. United Mo. Bank, N.A. v. City of Grandview , 179 S.W.3d 362, 366 (Mo. App. W.D. 2005).

We note that "[e]ven in a situation where the evidence could support two theories of recovery to which two separate MAI instructions would be applicable, the plaintiff has the right to elect the theory on which to submit [his] case and to select the appropriate MAI verdict director." Rider v. The Young Men's Christian Assn. of Greater Kan. City, 460 S.W.3d 378, 390 (Mo. App. W.D. 2015) (emphasis added). See also Adams v. Badgett , 114 S.W.3d 432, 436 (Mo. App. E.D. 2003). It was error for the trial court to require Baldridge to submit his claim under a hostile work environment theory as opposed to the theory which he desired to submit the matter, discrimination based on failure to accommodate, when the claim he wished to submit was properly pled and supported by substantial evidence. However, Baldridge does not challenge on appeal the trial court's submission of his claim under the hostile work environment theory and Baldridge was the party that suffered prejudice from this error.